## WALKER, ET AL. V. MILLER & Co.

1. M. & Co. indorsed for W. certain notes which the latter gave in part payment of a steamboat, and to indemnify the indorsers against liability, W. executed to them a mortgage on the boat, stipulating to have the boat insured and assign the policy to the mortgagees; W. afterwards being in failing circumstances, made an assignment of all his estate and effects (including the boat) to C. &c.; M. & Co. filed a bill against W., his assignees and others, alledging the assignment, the insolvency of W., his failure to insure, and assign the policy: *Further,* that the assignees deny their right as mortgagees, claim under the assignment an exclusive right to the boat to enable them to execute their trust, avow their purpose to employ and sell it irrespective of the complainants lien. It is also alledged that the assignees are unable to make good a loss resulting from its destruction, or condemnation to satisfy the demands of persons furnishing supplies, &c: *Held,* that the case stated in the bill, authorized the interposition of chancery, so as to make the boat subservient to the complainant's lien, upon the principle *quia timet;* and this although neither of the notes was due.

2. *Quere?* Where a bill alledged that the mortgagor of a boat was to have it insured and assign the policy to the mortgagees, which was not done, and the mortgagor admits by his answer that he had not assigned the policy, but alledges he had insured in a solvent office for the benefit of all concerned, with which the mortgagees were well satisfied; as the defendant admits that he did not comply with the contract in respect to the insurance, is not the affirmation of what he did and the complainant's assent to it, irresponsive, and should it not be proved by the respondent.

3. An assignment by a debtor of all his estate and effects to trustees for the benefit of his creditors, operates as a quit claim of the assignor's interest in the same plight and condition as he himself held the property conveyed, and will not defeat pre-existing liens; nor can the trustees be regarded as purchasers, or the *cestui's que trust* creditors within the registry acts.

4. Where a deed assigning all a debtor's property to trustees for the benefit of creditors, contemplates the exclusive management of the interests conveyed, by the trustees in the execution of their trust; it is competent for the trustees to assert their rights under the deed without making the creditors parties to a suit in chancery; and being competent to sue if they take possession of property which belongs to others, or on which others have liens they may be sued without bringing the *cestui's que trust* into court.

5. A mortgage was executed of a steam-boat to indemnify the mortgagees as indorsers of certain promissory notes, which authorised the mortgagees

to take possession of the boat if the notes were not paid as they matured, and stipulated further; that the boat should not leave the waters of the Mobile bay, and that the mortgagors would cause her to be insured and assign the policy to the mortgagees. A bill *quia timet* was filed by the mortgagees against the mortgagor and his assignees, who had obtained the possession of the boat, which was heard before the notes became due: *Held, that the decree should require the assignees to enter into bond with sureties to keep the boat in good repair*—not to remove her from the waters of the Mobile bay—to cause her to be insured and assign the the policy, and until this was done they and their sureties should stand as insurers. *Further*, if the notes should not be paid as agreed, then, they would deliver the boat to the mortgagees free from the liens of material men, &c. If such a bond should not be given, the decree might direct a sale of the boat by the sheriff, &c., for the purpose of preserving the fund until the debt matured, or conflicting liens were adjusted.

Writ of Error to the Court of Chancery sitting at Mobile.

THE defendants in error alledge in their bill that on or about the 16th of December, 1845, one Adams sold to Robert L. Walker a steamboat called the Dallas, for the sum of $15,000; one half of which sum has been paid, and for the remainder of the purchase money, Walker, together with Hamilton R. Johnston, gave four notes of the date aforesaid; the first of which is for the sum of $1500, due the 1st of January, 1847; the second for $2000, due the 1st of February thereafter; the third for $2000, due the 1st of March, and the fourth for the same sum, payable on the 1st of April thereafter. These notes were all indorsed by the complainants, on condition, that Walker would execute a mortgage of the boat for their indemnity, and the boat was thereupon delivered to the vendee. Accordingly, a mortgage was executed by Walker to the complainants, bearing date the 16th of December, 1845, which was duly acknowledged and recorded in the county court of Mobile in 1846; the parties and boat all being in that county.

It is further alledged, that as a condition on which complainants agreed to indorse Walker's notes, the latter agreed that the steamboat should not leave the waters of Mobile bay, and should be kept insured for an amount sufficient to cover the notes, and that the policies should be transferred to

the complainants; which agreement is evidenced by a memorandum written and subscribed at the foot of the mortgage.

Since the execution of the several transactions above stated, Walker has become insolvent; on the 5th of February, 1846, he executed a deed of assignment of all his property to Thomas J. Carver and Benjamin M. Woolsey, of the city of Mobile; in the schedule of his personalty thereto annexed, is the following, viz: "one steamboat Dallas, Capt. H. R. Johnston, commander." That deed was made to enable the assignees to collect the debts due the assignor, and to sell *his* title to the property conveyed by him, and to apply the proceeds to the payment of certain debts. The assignor did not intend to impair the lien he had previously given to the complainants; for the deed of assignment affirms that it made no provision for them, because he had already given them a mortgage on the boat for their security, which he considered a full protection. But his intention was to convey the boat subject to their lien, and of this the assignees were informed; they cannot therefore be allowed to defeat the complainant, by perverting the deed to a purpose never intended.

Complainants further alledge that the assignees of Walker have taken the "Dallas" into their possession, claiming under the assignment the entire interest therein, as if the mortgage above mentioned had never been executed; that they are now running it, under the command of Johnston, for freight and passengers, on the rivers emptying into the Mobile bay, by which the boat may be subjected to the liens of mariners, and other claims, or may be entirely lost or destroyed by fire or other perils; and the lien of the complainants become wholly valueless. *Further*, neither Walker nor Woolsey and Carver have caused to be effected any insurance on the "Dallas;" that Walker is wholly insolvent, and his assignees and Johnston, both collectively and individually, are unable to indemnify the complainants for their suretyship, should they lose the benefit of the mortgage.

The assignees assume the right to sell the entire interest in the boat, and apply the proceeds to the payment of the debts as provided for in the deed of assignment, without regard to the complainants' rights; and if a sale is made by

them, the boat may be sent off 'or destroyed, to the prejudice of the complainants.

Carver and Woolsey are charged with confederating with Walker and Johnston, and other persons unknown to the complainants, for the purpose of taking possession of the boat and making a profit from it, without regard to the risk of her loss, or the danger of her becoming incumbered, or carried away; that Adams refuses to come in under the deed of assignment, and unless complainants can be relieved in equity, they have no adequate remedy, &c.

The bill prays that Walker, Carver, Woolsey and Johnston be made defendants; that process issue to bring them before the court, &c.; that the mortgage and lien of the complainants upon the "Dallas" be established and made effectual in law, in preference to the claim set up under the deed of assignment; that Carver, Woolsey and Johnston, and all others, be enjoined and forbidden to use, remove, sell or otherwise dispose of her, until the sum for which she will sell be properly secured, and proper means be taken to make it available to the complainants; that the boat be insured, so as to prevent a loss to the complainants in the event of her loss by fire, &c.; that she be placed in the custody of the sheriff, or other trustee, until properly secured or disposed of; or that she be sold: *Further*, that a receiver be appointed to take charge of and manage the boat, &c. unless bond with good surety be given that the value thereof to the extent of the complainants' claim, be paid in discharge of the indorsements made by them; and that such other relief as may be appropriate be granted.

The defendant Walker answered, admitting the purchase of the "Dallas" by him, as alledged by the complainants, the execution of the mortgage and its delivery to them more than thirty days previous to the 9th February, 1846, when he acknowledged it with a view to its registration. He states that the boat was insured when he purchased it at Louisville, Kentucky, for $12,000, and he caused the insurance to be renewed in responsible insurance offices in the same city, for the same amount, for the benefit of all concerned, and the policies of course insure to the complainants to the extent of their interest. Respondent admits his insolvency,

that he had made an assignment of his estate for the benefit of his creditors; but did not make any provision for the benefit of the complainants, because he had supposed the mortgage on the boat was an ample indemnity, and would remain unaffected and in full force. He states that he did inform his assignees of the existence of the complainants' mortgage at the time he executed the deed to him—Carver, previous to the purchase of the boat, was informed of his intention to purchase, and to propose to the complainants to take a lien on the boat and become his indorsers for $8000.

Carver and Woolsey filed several answers. They each insist upon the benefit of a demurrer—the former admits that Walker informed him of his intention to purchase the "Dallas," and propose to the complainants to give them a lien on it, if they would become his sureties for eight thousand dollars of the purchase money—both of them admit that on the 5th of February, 1846, at the time Walker executed the deed of assignment, he informed them that the complainants had a lien or mortgage on the "Dallas," and were secured; but did not describe the lien more particularly. This was the only notice these defendants had of the existence of the mortgage, until after the deed of assignment was executed. Both these defendants insist that the mortgage was not acknowledged, or proved and registered, until more than thirty days after its execution and delivery to the mortgagees. They affirm that the boat was insured, as Walker alledges, and was under an insurance for the benefit of all concerned, when the bill was filed. They admit that under the assignment, they took possession of the boat, and run the same for freight, &c. under the command of their co-defendant, Johnston; that they believe Walker did not intend by the assignment to impair the lien of the complainants, yet insist that the failure of the latter to have their mortgage recorded within thirty days from its delivery, made it inoperative. They therefore claim the entire interest in the "Dallas," but as trustees, shall sell only such interest as they acquired by the assignment. These defendants, as well as their co-defendant, Walker, deny that the boat has run upon other waters than those entering into the Mobile bay, since the execution of the mortgage to the complainants; and therefore insist that

the mortgage has not been forfeited, and that no sufficient ground is stated in the bill for the interposition of equity. Both the defendants admit that they are not creditors of Walker, and that they are not able to make good the loss to the complainants, should the boat be destroyed, or they otherwise fail to obtain the benefit of their mortgage.

The defendant, Johnston, denies that he had any knowledge of the existence of the mortgage, until after its registration; admits that he was employed by Walker as the commander of the "Dallas," and since the assignment to Carver and Woolsey, has been employed by them in the same capacity. He demurs to the bill on the ground that he is an improper party, having no interest in the matter in controversy. All the defendants deny all fraud, and combination, to remove the boat, or otherwise prejudice the complainant's lien.

The complainants replied to the answers, re-affirming the truth of the allegations of their bill, and averring their sufficiency to sustain their prayer for relief. It is also alledged, that the answers are wholly insufficient, and irrelevant, and are untrue—all which the complainants are able, and willing, and offer to prove, &c.

The complainants objected to the admission of the schedules offered by the defendants, because they are no part of the deed of assignment—are not signed by either party—are not identified in any manner—were not proved or acknowledged, but were lodged at a time other than that when the deed was deposited in the clerk's office for registration. It does not appear that the schedules are the papers referred to in the deed, as being "in the possession of J. T. Carver." This being the case, it was insisted, that the registry of the deed was imperfect.

A decree was rendered by the chancellor, reciting that the cause came on to be heard on the bill, answers, deposition, and the documents produced on the trial, to wit, the original mortgage to the complainants, the agreement for insurance, and the transcript of the mortgage certified from the records of the county court of Mobile; also, the original deed of assignment set up in the answers, and certain schedules with the indorsement thereon, without further proof to show that they were duly recorded and part of that deed. The com-

plainants objected to the schedules for the reasons mentioned above. Thereupon, it was adjudged that the complainants were entitled to relief as prayed by the bill.

But it appeared to the court that divers persons by petition filed therein, claim liens on the steamer "Dallas" for stores, &c. furnished, under the several statutes providing a remedy by libel in the nature of admiralty proceedings, and pray that the chancellor will subject the boat to their demands, and allow them the same remedy which is granted in the proper court, inasmuch as the boat is in the custody of his court, and they cannot enforce their demands in the appropriate tribunal. These petitioners, the chancellor was of opinion, were entitled to be heard, and their claims would therefore be considered when the question of the distribution of the fund should come up.

It was further ordered and decreed, that the mortgage, agreement and lien of the complainants is paramount and effectual against the defendants; that the register do sell the steamer "Dallas," her apparel and furniture, at, &c. for cash, first giving ten days' previous notice, &c. unless the defendants, or some one of them, shall within five days from the rendition of the decree, give to the register a bond with good security, payable to the complainants; conditioned to indemnify and save them harmless from all damages or loss by reason of their indorsements alledged in the bill, &c. It was also referred to the register to ascertain how much was due on the notes indorsed by the complainants—how much was due to each of the claimants of liens, and to report, &c.

A. F. HOPKINS and W. G. JONES, for plaintiffs in error. The assignment made by Walker to Carver and Woolsey on the 5th February, 1846, and recorded on the 6th February, 1846, provides for the payment of certain preferred creditors *absolutely and unconditionally.* Therefore, their assent to the deed will be presumed, though they have not actually executed it; and such deed is not void because other creditors are provided for on condition of their executing a release. [9 Port. 566 ; 7 Ala. 262.]

Carver and Woolsey are mere naked trustees for the credi-

tors, having no interest themselves. Equity will look to the substance of the case—to the parties really interested—and will regard C. & W. as standing in the place of, and representing the creditors; although they were not their agents in obtaining the assignment. [11 Wheat. Rep. 82, et seq.; 2 Binn. Rep. 497; 5 Cond. Eng. Ch. Rep. 343.]

T. P. Miller & Co. lost the priority of the lien of their mortgage, as against the creditors claiming under the assignment, by failing to have their mortgage recorded in due time. [Clay's Dig. 255, 256, § 5.]

The creditors are regarded as purchasers for a valuable consideration, within the meaning of the statute, and having no notice of the unrecorded mortgage, until after the assignment was executed and recorded, the statute makes the unrecorded mortgage void as to them. [8 Ala. R. 866, and the cases there cited. [If regarded as *creditors*, notice will not affect them. [2 Lom. Dig. 368.]

It may be admitted that creditors at large are not the creditors meant by the statute; but the creditors provided for by the assignment ceased to be creditors at large as soon as the assignment was made and recorded. They thereby acquired a specific lien on the property for a liquidated debt; and it makes no difference whether such lien is acquired by judgment, execution, *attachment, mortgage, assignment,* deed of trust or otherwise. [8 Ala. 866; 1 Metcalf, 214.]

Carver and Woolsey were appointed and made assignees by Walker, and not by the creditors. No notice to C. & W. could affect or prejudice the rights of the creditors. [11 Wheat. 87; 2 Binney, 497; 1 Tamlyn, 172; 5 Cond. Eng. Ch. R. 343; 4 Eq. Dig. 404, § 15, citing 2 Johns. R. 320.]

Though the assignment was doubtless made of his own will, yet as it was to secure *bona fide* debts, it was not technically a mere *voluntary* conveyance. After it was recorded, it was irrevocable by Walker; and any one of the preferred creditors might certainly insist on and enforce its performance. [2 Ala. Rep. 315; 1 Stewt. & P. Rep. 11.]

Even if the court will not look to their creditors and protect their rights under the assignment, but looks only to Carver and Woolsey, yet C. & W. are to be considered purchasers. [See the cases above cited.]

Walker, et al. v. Miller & Co.

In that point of view, it is insisted that C. & W. had not in fact such *notice* of the unrecorded mortgage, as would defeat the statute and set up the unrecorded mortgage. To have this effect, it is not sufficient to show circumstances which might put purchasers on inquiry. The *notice* must be *clear*, *definite*, and *exact*. [2 Sugd. on Vend. p. 255, ch. 16, note 403; Ib. 315, 317; Fonb. Eq. 449, 450, 451; 2 Atkyns, 275; 3 Ves. Jr. 478; 19 Id. 435; 8 Cowen, 260; 2 Johns. Ch. R. 182; 4 Eq. Dig. 404, § 15.]

The fact that Carver's name appears subscribed as a witness to the mortgage, can have no influence in showing notice; for it is clearly proved that he subscribed his name *after* the assignment to him and Woolsey was made and recorded. Besides, being a subscribing witness, is not even *prima facie* evidence of knowledge of the contents of the instrument. [2 Sug. on Vend. 343; 5 Taunt. 257; 1 Vesey, Sr. 6; 1 Esp. Rep. 57.]

The notes being not yet due, the bill was prematurely filed. No sufficient ground is shown for coming into equity before the forfeiture of the mortgage. [4 Johns. Ch. R. 571.]

Walker retained the right of possession of the boat, until there was a failure by him to pay either one or all the notes, and this right would be liable to the beneficiaries under the deed; or if not required to answer the purposes of the deed, might be subjected to the debts of other creditors. [2 Ala. R. 314.] The mortgagee may convey his equity of redemption in personal property. [4 Ala. Rep. 469.] In estimating the value of the "Dallas" at $15,000, the mortgagor shows that he intended to assign the entire interest to his assignees, and not merely his right to the possession.

It is not alledged that the assignees or creditors of Walker had notice of the agreement to insure the boat, and the assignment cannot be prejudiced, even if Walker failed to comply with this agreement. Besides, a non-compliance did not have the effect to operate a forfeiture of the mortgage. But the proof supports the answer, and shows that the insurance was satisfactory.

The danger that the complainants' mortgage might be defeated by the boat being libeled and condemned at the suit of persons furnishing supplies, &c. did not under the circumstances authorise an injunction to issue; it was contemplated

by the contract between the complainants and Walker, that the boat was to be run until the mortgagors' default, upon the waters of the Mobile bay. If Walker or his assignees attempted to remove the "Dallas," then a court of equity could interfere for the protection of the complainants' security. But the removal of the boat, or the failure to insure, did not authorise its sale without giving to the assignees the option of giving a bond with surety for the complainants' indemnity.

The case made by the bill does not negative the fact of the execution of the deed by the creditors of the third class, if this be at all material. [8 Ala. Rep. 874.] No decree could be rendered in this case affecting the interest under the assignment of the beneficiaries. They are indispensable parties, and this question is raised by the demurrer in the answers. [Story's Eq. Plead. § 82, 83, 709.]

G. N. Stewart and J. A. Campbell, for the defendants in error. The bill is maintainable as a bill *quia timet*—the boat has been conveyed by the mortgagor to irresponsible men who claim the exclusive estate in it, who announce their intention to sell it—each act of employment subjects it to loss, and each debt contracted by the assignees on account of the boat creates a lien superior to the complainants'. [18 Vin. Ab. 141; Hob. Rep. 217; Drewry on Inj. 176, 273; 10 Ves. Rep. 159; 1 Ired. Rep. 42; 2 Ired. Eq. Rep. 569; 7 Dana's Rep. 230; 6 Ala. Rep. 463; 8 Id. 206; Baldw. Rep. 232; 2 Story's Eq. 35, 36, 129; 1 Freem. Eq. Rep. (Miss.) 273; 1 Dev. Eq. Rep. 151; 2 Id. 31.] An injunction will be granted in favor of the first equitable mortgagee against a second legal mortgagee to restrain him from selling till the rights of the former are established. [Drewry on Inj. 342.] So where it is necessary to protect the rights of parties by executing a deed at once, chancery will direct it to be done, though the time appointed for its execution has not arrived. [7 Ala. Rep. 697.]

The facts set forth in Walker's answer, in respect to the insurance, are in avoidance, and have not been proved; so far from denying the allegation of the bill upon this point, they tend rather to support it.

It is denied that the assignees take as purchasers—they ac-

quire the right which their assignor had, subject to defences good against him. [1 Paige's Rep. 125; 4 Id. 215; 10 Id. 211; 6 Ala. Rep. 639; 8 Id. 920; 3 How. Rep. U. S. 333; 18 Pick. Rep. 245; 20 Id. 321.] Such is the rule in cases of bankruptcy. [Owen on Bankr. 71; Eden's Bankr. L. 284, 291, 203.] To entitle a creditor to insist that a deed made by his debtor has not been registered as required by the statute, he must have acquired a lien by some legal proceeding. Any act of the debtor which gives a lien to the creditor, constitutes the latter a purchaser of the estate. But to make a purchaser within the meaning of the registry acts, the consideration must be something more than a security for, or an indemnity against a pre-existing demand. Courts have never gone farther than to admit a very small additional consideration as sufficient. [5 Hump. Rep. 26; 1 Pick. Rep. 164; 4 Id. 253; 8 Conn. Rep. 186; 4 Dana's Rep. 258; Harp. Rep. 295; 3 Hare, 416; 5 Greenl. 369; 6 Id. 256; 13 Con. Eng. Chan. Rep. 121; 8 Ala. 867; 3 Id. 573.]

The deed of assignment is void, [4 Ala. 374; 6 Hill's R. 438]; and is inoperative because no creditor has assented to it. [10 Pick. 408; 7 Ala. 262; 9 Ala. 305; Hodge v. Wyatt & Houston, June Term, 1846.]

The notice to the assignees was part of the *res gesta,* viz: making the assignment. It informed them that they received it under an incumbrance to the complainants. Carver heard previously that it was to be incumbered, and could readily refer his information to what he had before heard. [8 Ala. 862; 3 H. & M 144; 3 Conn. 146; 4 Litt. 318; Coventry's Conv. Evi. 217; Miller on Eq. Mort. 89, 90, 110, 223.]

In respect to the argument by the plaintiffs in error, that the assignment was the act of the grantor, and requires not the assent of trustees or *cestuis que trust,* it is insisted that the inference drawn from it, is not maintainable; inasmuch as the grantor could not by his own voluntary act defeat an estate which he had created. [10 Paige, 210.] The argument as to the disposition of the fund produced by the sale of the boat is premature. That question is still before the chancellor, to be decided by those who have liens as material-men and laborers. The complainants do not insist that they are

entitled to all the fund. The boat is not directed to be sold as a part of the decree in the principal cause; but because the detention of the property is prejudicial to all the parties, and as a means of preserving it, pending the litigation.

COLLIER, C. J.—It is insisted for the plaintiff in error, that the cause should have been repudiated by the chancellor, as there is no sufficient ground shown for the interposition of equity. The suit, if sustainable, must be as a bill *quia timet* which is said to be in the nature of a writ of prevention, and intended to accomplish the ends of precautionary justice. Such bills are usually applied to prevent wrong, or anticipated mischiefs, and not merely to redress them when done. Courts of equity sometimes interfere in such cases by the appointment of a receiver to receive rents or other income; sometimes by an order to pay a pecuniary fund into court; and sometimes by the mere issuing of an injunction; thus adapting the relief to the precise nature of the particular case, and the remedial justice required by it.

In regard to equitable property, the jurisdiction is equally applicable to cases where there is a present right of enjoyment, and to cases where the right of enjoyment is future, or contingent. " The object of the bill in all such cases is to secure the preservation of the property to its appropriate uses and ends; wherever there is danger of its being converted to other purposes, diminished, or lost by gross negligence, the interference of the court becomes indispensable. It will accordingly take the fund into its own hands, or secure its due management and appropriation, either by the agency of its own officers or otherwise. Thus, for instance, if property in the hands of a trustee for certain specific uses, or trusts (either express or implied,) is in danger of being diverted, or squandered, to the injury of any claimant, having a present or future fixed title thereto, the administration will be duly secured by the court according to the original purposes, in such manner as the court may in its discretion, under all the circumstances, deem best fitted to the end; as by the appointment of a receiver; by payment of the fund, if pecuniry, into court; or by requiring security for its due preservation and appropriation." [2 Story's Eq. § 826-7.]

Walker, et al. v. Miller & Co.

The remedy by bill *quia timet*, is appropriate, where there is any danger of loss, or deterioration, or injury to personal property, which is in the hands of the party entitled to the present possession, and in which another person is entitled to a future right of enjoyment. It applies where a future interest in personal property is assigned by a debtor to his creditors; in such case the latter may come into equity to have the property secured to their future use. In Johnson v. Mills, 1 Ves. Rep. 282, Lord Hardwicke said, that nothing was better settled than, wherever a demand was to be made out of assets certainly due, but payable at a future time, the person entitled thereto might come against the executor to have it secured for his benefit, and set apart in the meantime, that he might not be obliged to pursue those assets through several hands: *Further*, that there was no ground for a distinction between a legacy and a demand by contract. See also, 2 Ves. Rep. 619; 1 Chan. Cas. 223; 2 Johns. Ch. Rep. 561; 4 Id. 132; 6 Ves. Rep. 734; Jeremy's Eq. Jurisd. 354, *et post;* 1 Bro. Ch. Rep. 108; 2 Id. 321; 2 Story's Eq. 129 to 146; Ired. Eq. Rep. 42; 2 Id. 573; 7 Dana's R. 232; 6 Ala. R. 463; 1 Freem. Ch. Rep. 273; 10 Ves. R. 161; 7 J. J. Marsh. R. 409; 5 Litt. R. 180.

A mortgagor, it is said, will not be allowed to do any acts injurious to, or diminishing the security of the mortgagee; and if he should commit, or attempt to commit acts of waste, he will be restrained therefrom by process of injunction. In Call v. Scott, 4 Call's Rep. 402, it was held, that where A gave a mortgage to C, to indemnify the latter against his indorsement for the former, a bill *quia timet*, will lie at the instance of C, against A's representatives, for a decree that they shall pay the indorsee, and indemnify C against his indorsement. So it has been decided, that equity will not, except under special circumstances, entertain a bill for the specific execution of a contract respecting a chattel; yet where a trust is concerned, which is peculiar to equity, it will interfere and relieve when it is ended, or is likely to be abused. [3 Marsh. Rep. 477.]

In regard to the respective interests of the mortgagor and mortgagee, it has been held that the mortgagee of personal property may maintain trover against the attaching creditor,

though he stipulated with the mortgagor that he should retain possession and sell the property to pay the debt. [3 Fairf. Rep. 282.] So if the mortgagor cut and carry away timber trees, he is liable to the mortgagee in possession in an action of trespass for their value. [4 Munf. Rep. 382; 2 Greenl. 132, 173, 387.] It may be regarded as the settled law of this State, that the mortgagor's interest, even in personal property mortgaged by him, of which he retains the possession, may be levied on under execution, and if the mortgage has not become forfeited, so as to entitle the mortgagee to interpose a claim at law, his remedy is in equity, where the interests of the mortgagor may be ascertained and separated from that which he asserts. [2 Ala. Rep. 318; 4 Id. 469; 5 Id. 770; 6 Id. 27.]

Walker admits that he stipulated to insure the "Dallas," for an amount equal at least to the notes in which the complainants are his sureties, and to assign the policy to them. Thus far his answer is responsive, but in affirming that he did insure, even for a larger sum, *for the benefit of all concerned;* that the policy to the extent of the complainant's liability inured to them in the event of a loss, and that they were well satisfied with it, the answer attempts to avoid a strict compliance with the respondent's undertaking, and its allegations should be proved. In the condition of the record, must we not conclude that Walker failed to comply with his stipulation in respect to the insurance? This being the case, may not a court of equity entertain the complainants' bill, and give them the indemnity which the insurance would have afforded?

Again : the assignees of Walker deny the right of the complainants as mortgagees—claim under the assignment an exclusive and absolute right in the steamboat to enable them to execute the trust conferred upon them—avow their purpose to employ or sell it, without regard to the complainants' lien, and admit their inability to make good any loss which may be sustained by the destruction of the boat, or result from its condemnation under the statute to satisfy the demands of shippers of merchandise, persons furnishing supplies, &c. This being the case, we cannot doubt that the complainants may well apprehend the security afforded them

by the mortgage is in jeopardy and may become unavailable, and that it is competent for chancery to interpose its extraordinary powers and make the mortgaged property subservient to the lien. This, we think, is so obvious a sequence from the law as we have stated it from the books, that argument is not necessary to illustrate it. See Lyon, et al. v. Hunt, et al. at this term.

We are now brought to consider whether the failure of the complainants to have their mortgage recorded, postponed its operation, so as to give priority to the assignment made by Walker for the benefit of his creditors. The act of 1828, "more effectually to prevent frauds and fraudulent conveyances, and for other purposes," enacts that "all deeds and conveyances of personal property in trust, to secure any debt or debts, shall be recorded in the office of the clerk of the county court wherein the person making such deed or conveyance shall reside, within thirty days, or else the same shall be void against creditors and subsequent purchasers, without notice." In Smith & Co. v. Zurcher, 9 Ala. 208, it was decided that mortgages were within the meaning of the act, just as much as conveyances, which in technical language were called deeds of trust. [See also 4 Ala. R. 469.] The questions arising under this branch of the cause are— *First*—Do the assignees or the beneficiaries under the deed stand in such a predicament as purchasers or creditors, as entitles them to defeat the operation of the mortgage because it was not recorded in due season? *Second*—If so, does it not appear, although the mortgage was not registered in time, that the assignees had notice of it, when they received the deed of assignment.

In Dickerson v. Tillinghast, 4 Paige, 215, the question arose as to what was necessary to constitute a *bona fide* purchaser within the meaning of the registry act of New York. The chancellor said he was one who had actually parted with his property on the credit of the estate, so as to give him an equitable claim or specific lien thereon, without notice of a prior equity, and had also clothed that equitable lien with the legal title, by taking a deed or mortgage. Such a purchaser would not be divested of that legal title or lien,

136

in favor of a prior equity.  But if he had notice of a prior
equity at any time before he had parted with his property on
the credit of the estate, and before he had united the subse-
quent equity with the legal title, he was not considered as
entitled to protection against the prior equity as a *bona fide*
purchaser :  *Further*, the words " *bona fide* purchaser," were
intended to be used in the registry acts according to the es-
tablished meaning thereof, and must receive the construction
which had been previously placed on them in the court of
chancery in reference to the principle of equity here stated.
It was added, that, if the subsequent purchaser merely takes
the legal estate in payment of, or as security for a previous
debt, without giving up any security, or divesting himself of
any right, or placing himself in a worse situation than he
would have been, if he had received notice previous to his
purchase, of the title or lien of a third person, chancery will
not permit him to retain the estate he has thus acquired to
the prejudice of such person.   [See also 2 Paige's Rep. 300,
and the citations in each of these cases.]   So it has been held
that a purchaser under a quit-claim deed without any cove-
nant of warranty, is not entitled to protection in a court of
equity as a purchaser for a valuable consideration without no-
tice—that such vendee takes only what his vendor could
lawfully convey.   [3 How. Rep. (U. S.) 333.]

It is said to be a general rule of law, that a person cannot
by any voluntary act of his own, transfer to another a right
which he does not himself possess.   And it has been accord-
ingly decided, that, where an insolvent debtor has made a
fraudulent transfer of his property, or has discharged his own
debtor from liability for the purpose of defrauding his credi-
tors, so that he cannot reclaim the property or sustain a suit
for the debt in his own name, he cannot by an assignment
which is wholly voluntary on his part, take away the right of
his creditors generally to set aside the fraudulent transfer, or
to recover the debt fraudulently discharged, and transfer that
right to his own assignee for the benefit of preferred credi-
tors ; or even for the benefit of all his creditors equally.   [10
Paige, 211, 219.]

In protecting the interest of subsequent purchasers without
notice, against the effect of prior unregistered conveyances,

the language employed in the statutes of the different states, if not identical, is substantially the same : consequently, the decisions of one state as to the character of a *bona fide purchaser* within the meaning of the registry acts, are at least persuasive evidence of the law in every other state.   The prefix "*bona fide*" does not essentially change the meaning of the statute, and cannot warrant an interpretation different from what it would receive if they were omitted ; for no purchaser is in a condition to controvert the rights of creditors, or of persons having equitable liens, or an incomplete legal title, unless his purchase was made *in good faith* and *without notice*.

An assignment by a debtor in failing circumstances for the benefit of all his creditors is regarded as voluntary on his part, and it will be thus regarded, although it prefers some of the creditors to others.   It must be considered rather as a devotion of the property conveyed to the payment of the grantor's debts, than a sale of it to trustees or the beneficiaries under the deed.   Though the debtor has parted with his estate, and thus invested his assignees with the legal title, that they may dispose of it for the benefit of others, yet neither the assignees nor creditors can in popular parlance be said to have purchased it.   The assignor has merely substituted the assignees to his own rights, and made them the depository of the title which he had, and nothing more.   By such a transaction, it cannot be intended that the debtor contemplated the divestiture of rights, which he had previously transferred ; but the reasonable inference is, that he proposed to substitute the assignees to the same situation in respect to the property as he himself had occupied, and not to confer a greater or less estate.   And as neither the assignees nor the creditors advanced money or other thing of value as an inducement to the assignment, but were most probably passive, their understanding in respect to the interest conveyed must have harmonised with the intention of the assignor.   We need not however extend this course of reasoning, for it is perfectly clear, that, although the assignees have the legal estate, yet they have no interest apart from the trust with which they are invested by the deed.   The beneficiaries have not accepted in satisfaction of their demands any specific property,

and retain their character of creditors—looking to the assignment as a mere security. [See 3 Kinne's L. Comp. 42 to 49, and citations there.]

The cases cited upon this question, are directly in point, and we think are well supported by reason. The citations from 2d and 4th Paige, establish that a purchase within the meaning of the registry acts, is one who has parted with his property on the credit of the estate without notice of a prior equity, and who by taking a deed or mortgage has clothed himself with the legal title. 10th Paige maintains that a person cannot by an assignment for the benefit of creditors, which is merely a voluntary act of his own, transfer to another a right which he does not himself possess. The case in 3d Howard decides, that a vendee under a quit-claim deed takes only what his vendor could lawfully convey, and is not entitled to protection in equity as a purchaser for a valuable consideration without notice.

In the case at bar there is no pretence that any consideration other than Walker's indebtedness, induced the making of the assignment; and it is clear from the terms of the statute, that the mortgage to the complainants is good as between the mortgagor and themselves: such is the uniform current of decisions in the construction of kindred enactments. It therefore follows, that the assignment did not defeat the mortgage.

Again: the assignment, as we have seen, only operates as a quit-claim of the assignor's interest. This being so, there is no express warranty, and none can be implied; consequently, the assignees, or the *cestuis que trust*, cannot be regarded as purchasers within the meaning of the registry acts.

In Daniel v. Sorrells, et al. 9 Ala. 436, we decided that the statutes which declare that an unregistered deed shall be imperative against *creditors without notice*, does not mean *creditors at large*, but such as have obtained a lien by the recovery of a judgment, &c. Here, the only lien which it is pretended the creditors have acquired, is that resulting from the deed of assigument, and this we have seen merely transfers the interests of the assignor in the same plight and condition in which he had them—without creating a lien upon, or divesting the rights of third persons in property he had

Walker, et al. v. Miller & Co.

disposed of.   The *cestuis que trust*, or the assignees as their representatives, cannot in the character of creditors postpone the complainants' claim as mortgagees.   Having attained these conclusions as to the effect of the failure of the complainants to cause their mortgage to be recorded, we need not inquire whether the assignees had notice of the mortgage when they accepted the assignment.

It is insisted by the plaintiffs in error, that the beneficiaries under the deed of assignment are necessary parties to the suit, and that for the failure to join them, the demurrer contained in the answers should be visited on the bill.   Lord Eldon said that "in *most* cases respecting trust property," the *cestuis que trust* should be made parties; but where the existence of the property is not affected, and the only object is to transfer it into the hands of the trustees, the latter need not bring the *cestuis que trust* into court.   It has been held, that "trustees of real estate for payment of debts or legacies, may sustain a suit either as plaintiffs or defendants without bringing before the court the creditors or legatees for whom they are trustees;" but if the existence or due administration of the trust fund is called in question, then they must be made parties.   So, it is laid down as a general rule, that in a bill founded on a contract, it is necessary to make only those persons parties, who are parties to the contract; yet it does not follow that a third person for whose benefit it was made, may not come into equity and compel its fulfilment.   [Calvert on Part. 8, 212 to 219.]   In Bifield v. Taylor, 1 Beat. Rep. 91, and 1 Mall. Rep. 192, it was decided, that when the intention of the person originating a joint beneficial interest in a fund, appears clear, to constitute the party in whom the legal right of action is vested, completely the representative of the beneficiaries, that case forms an exception to the general rule, that in equity the *cestuis que trust* shall be parties to a suit instituted by their trustee, and entitles him to sue in equity without their being joined. This decision rests upon the ground that the legal title is vested in the trustees for the express purpose of enabling them to execute all the duties attached to the trust, without the intervention of the *cestuis que trust*.   So, in Braker v. Devereaux, 8 Paige, 513, it was said, if the absolute title to

an undivided portion of the premises is vested in a trustee upon a valid trust, it seems not necessary to make the *cestui que trust* a party to a partition suit in chancery; but, that it will be sufficient to bring the trustee, who has the whole legal estate in the premises, before the court. Where a mortgage of lands has been executed to a trustee to secure the payment of debts to sundry persons, the trustee may maintain a suit in chancery to foreclose without making the *cestuis que trust* parties. [4 Stew. & P. 447. See also 2 B. Monr. 232; 1 Green's Ch. R. 305.]

The rule which requires all persons interested to be made parties in chancery has other exceptions; as where from the number interested, it would be impossible, or would produce great inconvenience. Thus, part of a crew are permitted to sue for prize money; and where the creditors of a person are very numerous, it is not necessary that all should unite in a suit. [1 Wash. C. C. Rep. 517; 2 Mason's Rep. 181.] And in Hallett v. Walker, 2 Paige's R. 15, it was said, that the rule requiring all persons materially interested in the subject matter of the litigation to be made parties to the suit, may be dispensed with, when it becomes extremely difficult or inconvenient. [See also 10 Wheat. 152.] Lord Hardwicke, in Yates v. Hambly, 2 Atk. R. 237, thus expresses himself: "Where a mortgagee who has a plain redeemable interest, makes several conveyances upon trust in order to entangle the affair, and to render it difficult for a mortgagor or his representatives to redeem, there it is not necessary that the plaintiff should trace out all the persons who have an interest in such trust, to make them parties." [See 2 Madd. Ch. 190.]

The authority conferred upon the assignees of Walker contemplates their exclusive management of the property and interest transferred for the benefit of his creditors, and it is competent for the assignees to assert their rights under the deed without making the creditors parties to a suit in chancery. Being competent to sue if they take possession of property which belongs to others, or on which these persons have liens, they may be sued without bringing all the parties into court.

*Besides*, the beneficiaries under the trust deed are so numerous, that it would be exceedingly inconvenient, if not

impracticable, to prepare a cause for hearing, in which they were all parties—to say nothing of the expense and delay consequent upon such a suit. The mortgage expressly authorises the complainants to take possession of the steamboat upon the failure of the mortgagor to pay either or all the debts against which it is intended to secure him,. to sell or otherwise dispose of it; and it cannot be that in a suit *quia timet* to restrain the removal of the mortgaged property so that it may be available to the mortgagees, that it is necessary to look beyond the assignees of the mortgagor who are in possession under an absolute legal estate. If the *cestuis que trust* have equitable interests against the mortgagees, they may become actors, and arrest a sale of the boat under the mortgage, or claim the proceeds. From this view, it results that the bill is not defective for the want of parties.

What we have said is decisive of the rights of the complainants and defendants, and indicates that the lien of the complainants under the mortgage is paramount to the claim of the assignees of the mortgagor, or any one else growing out of the assignment. But the question has been raised at the bar, whether, admitting the superior right of the mortgagees, the decree as it affects the assignees is correct.

If the notes indorsed by the mortgagees were not paid as they matured, then they were authorised by the mortgage to take possession of the " Dallas" and dispose of it, so as to pay them. In the mean time, the mortgagor stipulates that the steamer shall not leave the waters of the Mobile bay : *Further*, that he will cause her to be insured and so continued for an amount equal at least to all the notes, in some responsible office, and that he will indorse the policy to the mortgagees.

The interest of Walker in the steamer up to the time the mortgage became forfeited, according to repeated decisions of this State, could have been levied on and sold under a *fieri facias;* and if it could be thus disposed of to satisfy a creditor's demand, we can perceive of no well founded reason, why the mortgagor should not be permitted to sell or assign it for the benefit of creditors. One who takes under such an assignment must be entitled to the entire interest which the mortgagor had, and has undertaken to convey. In respect

to the property, he will stand precisely in the same situation as the mortgagor did; though perhaps upon a showing less strict, the mortgagee might file a bill *quia timet* against the assignee and require security for his indemnity. But upon the allegation that the mortgaged property had been transferred for the benefit of creditors to insolvent assignees, a decree could not be rendered before the debt provided for by the mortgage matured, directing a sale of the property, unless the assignees entered into bond with sureties to pay all the notes according to their tenor and effect. Such a requisition upon the assignees does not conform to the contract between the mortgagor and mortgagee—instead of requiring them to give such security as will insure the benefit of the mortgage to the mortgagee, the decree directs the boat to be sold, unless they will stipulate for the payment of the debt; thus superseding the mortgage, or giving a new and independent security.

The decree should have required the assignees to enter into bond with sufficient sureties to keep the "Dallas" in good repair—not to remove her from the waters of the Mobile bay—to cause her to be insured, and assign the policy as agreed between the mortgagor and mortgagee, and until this was done, they and their sureties should stand as insurers; *and further*, if the notes should not be paid as provided, then they would deliver the "Dallas" to the mortgagees free from the liens of material-men or other persons, which could affect its sale at a fair price. In the event that such a bond was not given, the decree might have directed a sale of the boat by the sheriff, &c. as a means of preserving the fund until the debt matured, or conflicting liens were adjusted. We might here render the proper decree, but as we do not know what proceedings have taken place under that rendered by the chancellor, we think it safer to remand the cause, that it may be proceeded in according to the principles indicated. The decree is accordingly reversed, and the cause remanded.