## ESTABROOK and another vs. MESSERSMITH, impleaded with another.

When a bill of exceptions was settled before the judge, one of the plaintiffs' attorneys appeared and professed himself satisfied with it, the judge having at his instance rejected a draft for said bill drawn by the defendants' attorney, and accepted one drawn by said attorney for the plaintiffs (except the concluding paragraphs, which stated the verdict of the jury, entry of judgment and signing and sealing of the bill by the judge). The bill thus settled was presented to the judge for his signature in open court, another of the plaintiffs' attorneys being present and appearing for them, and the whole bill being then shown to him, and especially the concluding clauses; and the judge filled in the date, signed the bill, and wrote his name upon the exhibits attached, in the presence of said attorney, who made no objection thereto. The bill itself recited that it had been "settled by the court in the presence of the parties by their attorneys." Afterwards the plaintiffs moved to strike the bill from the files of this court, upon affidavits of their attorneys that it was settled and signed without notice to them; that they were not served with a copy of it; and that they had never assented to the signing of it. *Held,* that the motion must be denied, the plaintiffs' attorneys having in effect waived service of copy and notice, and having assented to the signing by not objecting when they should have done so.

Where A, on entering into partnership with B, purchases an interest in a stock of goods held by B, and the goods are afterwards seized on attachment as the property of a third person, and, in an action by A & B against the attaching

officer, it appears that the goods were sold to B by the attachment debtor, and that such sale was fraudulent and void as to the attaching creditor, A & B cannot recover any part of the value of the goods on the ground that A purchased his interest without knowledge of the fraud.

In actions by co-partners for the alleged wrongful taking and conversion of the partnership property, all the plaintiffs must be entitled to judgment, or none; and where either is precluded on the ground of fraud, the fraud binds the others also, in that suit.

In such a case, it seems that if the defrauded partners have any remedy, it is by a suit in equity.

Creditors who have received a per centage of their claim under an assignment made by their debtor for the benefit of creditors, may still proceed by action against the assignor, and, in a proper case, may attach any of his goods which were not transferred by the assignment.

A voluntary assignment by a debtor of all his property for the benefit of creditors, does not carry with it to the trustees the title to property which he had previously transferred fraudulently for the purpose of hindering, delaying or defrauding his creditors. The assignor, having himself no property in goods thus fraudulently transferred, can pass none to his assignees.

APPEAL from the Circuit Court for *Iowa* County.

This action was brought in August, 1847, by *Albert Estabrook* and *William Bromley* against *Messersmith*, sheriff, and one Carter, deputy sheriff, of said county, for the wrongful taking and conversion of certain goods alleged to be the property of the plaintiffs. *Messersmith* answered, justifying the taking on the ground that the goods were seized under a writ of attachment against one Roger Bromley, at the suit of Gregory, Tilton & Co., of Boston, to whom he was indebted for the same, and that the plaintiffs held the goods under a transfer from Roger Bromley which was fraudulent and void as against creditors. It appears from the evidence that the goods were purchased by Roger Bromley of Gregory, Tilton & Co., in 1856, and his notes given them for their value. In the fall of 1856, Roger Bromley sold the goods to *William Bromley* and Henry Hoyt, partners in the mercantile business at Mifflin in Iowa county; and Hoyt sold out his interest about the 1st of January, 1857, to *William Bromley*. The plaintiff *Estabrook* claims to have purchased of *William Bromley* an undivided half of the goods between the 1st and 8th of January, 1857, going into partner-

ship with him in the mercantile business at Mifflin.   On the 24th of the same month, Roger Bromley assigned to Edwards & Laughton, for the benefit of his creditors, all his goods, wares and merchandize then in his store in Platteville; and about the 1st of March following, the assignees paid to Gregory, Tilton & Co. (who were not preferred creditors) 28 8-10 per cent. on certain claims which they held against said Roger, amounting to four or five thousand dollars.   On the 7th of April, 1857, Gregory, Tilton & Co. commenced an action in the circuit court for Grant county against Roger Bromley, to recover the amount of the notes above mentioned, being the sum of $2348.82.   On the 8th of the same month, they obtained in said action the warrant of attachment against the property of said Roger Bromley, under which the sheriff seized the goods in question.

The cause was not brought to trial until 1863.   At the trial, a considerable amount of evidence was introduced on both sides, which it is not necessary to state here.   The court gave the jury the following with other instructions : "*Sixth.*   If one or more persons purchase property from another, with knowledge that the vendor, by such sale, intended to hinder, delay or defraud his creditors, and then sells such property to a person who has no knowledge or information that the title of his vendor was voidable on the ground of fraud or otherwise, the last purchaser gets a good title as against the prior vendors, and as against the creditors of the fraudulent vendor.   If you are satisfied from the evidence that the plaintiff *Estabrook*, as to an undivided half of the property in question, stands in the position of the second purchaser as above stated, then the plaintiffs are entitled to a verdict to the amount of the purchase so made by *Estabrook*, with seven per cent. interest on the value thereof from the time the property was taken by defendants.   And such must be your verdict although you should at the same time be satisfied from the testimony that Roger Bromley intended to hinder, delay or defraud at least some of

his creditors when he sold goods to Hoyt & *Bromley*, and that they were then aware of such his intent. *Seventh.* If you are satisfied from the evidence that Gregory, Tilton & Co., before the commencement of the attachment suit, received a per cent. on the debt due them from Roger Bromley, from Edwards & Laughton, as proceeds of property assigned to them by Roger Bromley for the benefit of his creditors, and that Roger Bromley assigned to Edwards & Laughton all his property for the benefit of his creditors, then Gregory, Tilton & Co. could not proceed by suit and attach any of the property owned by Roger Bromley at or prior to the time of making the assignment, and the justification set up as a defense in this action cannot be maintained. *Eighth.* Again, if the sale of the goods by Roger Bromley to Hoyt & *Bromley*, and to *Bromley & Estabrook*, was fraudulent and void as to the creditors of Roger Bromley, then the assignment of Roger Bromley to Laughton & Edwards, on the 24th of January, 1857, of all his property for the benefit of his creditors, (if you find that he made such an assignment,) transferred the title to the property in question to the assignors, and Roger Bromley had no longer any title to this property, and the justification set up as a defense in this action is not made out." The ninth instruction was substantially the same as the eighth.

Verdict for the plaintiffs, and judgment upon the verdict; from which the defendant *Messersmith* appealed.

*J. T. Mills*, for appellant.

*Knowlton & Magoon*, for respondents.

[No printed briefs on file.]

*By the Court*, DIXON. C. J. The plaintiffs move to strike the bill of exceptions from the files, because it was settled and signed without notice to their attorneys, and because no copy was served upon them. The motion is made upon the affidavits of their attorneys, Mr. Knowlton and Messrs. Clary & Magoon, to the effect that they were not served with a copy of

the proposed bill, nor with notice of settlement, and that they never assented to the signing of the same. In opposition to these is the affidavit of Mr. Mills, one of the attorneys for the defendants, who makes a statement in detail of the facts which occurred in connection with the settlement and signing of the bill. Mr. Mills deposes that when the bill was settled before the judge, Mr. Magoon appeared and professed himself perfectly satisfied with it; the judge, at Mr. Magoon's instance, having rejected the draft prepared by Mr. Mills and accepted that drawn by Mr. Magoon, saving the concluding paragraphs, which show the verdict of the jury, entry of judgment, and signing and sealing by the judge. Mr. Mills further deposes that the bill thus settled was presented to the judge for his signature in open court, at the September term, 1863, Mr. Clary being present, and appearing for the plaintiffs; that the whole bill was then shown to Mr. Clary, and especially the concluding clauses; that the judge filled in the date, wrote his name upon the exhibits and signed the bill, in Mr. Clary's presence; and that Mr. Clary made no objection to the signing of the same, and deponent never heard of any from any party until the making of this motion. The bill of exceptions furthermore recites, that "having been settled by the court, in the presence of the parties, by their attorneys, the same is signed and sealed by the judge," &c. Upon these facts, the motion must be denied. The history of the transaction shows that the attorneys for the plaintiffs waived service of copy and notice, and that they assented to the signing by not objecting when they should have done so.

The judgment must be reversed for error in granting the sixth, seventh, eighth and ninth instructions asked by the plaintiff.

1. The first clause of the sixth instruction is without objection, but the last is not. The plaintiffs were partners, and sue for the alleged wrongful taking and conversion of their partnership property; and such is the nature of their legal rights

—they are so indissolubly blended—that they must not only join in an action at law, but a right of action must be established in both, or no recovery can be had. It is a general principle applicable to suits of this nature, that all must be entitled to judgment or none, and in cases where either party is precluded on the ground of fraud, the fraud binds not only the guilty partner, but the innocent partners, in that suit. Story on Partnership, § § 236, 108 and 166. The error in this instruction is, that it directly contravenes this principle. The jury were told that the plaintiffs might recover, even though they should find that one of them was not entitled to maintain an action at all. The judgment, when recovered, would be the joint property of all the plaintiffs, and would go to the benefit of the guilty equally with the innocent. The law does not tolerate any such inconsistency as to allow a guilty party to come into court and reap the benefit of his own fraud by joining his innocent co-partner with him. These principles are fully illustrated by the following cases : *Jones v. Yates,* 9 Barn. & Cress., 532 (17 E. C. L., 436); *Wallace v. Kelsall,* 7 Mees. & Welsb., 264, 273 ; *Homer v. Wood,* 11 Cush., 62 ; *Fellows v. Wyman,* 33 N. H., 358 ; *Kilby v. Wilson,* Ryan & Moody, 178 (21 E. C. L., 409); *Richmond v. Heapy,* 1 Starkie, 202 (2 E. C. L., 356). It would seem from these authorities that if the defrauded partner has any remedy, it is by a suit in equity, in which the objection of joining his guilty co-partner as a party plaintiff is easily obviated.

2. In the seventh instruction, the jury were charged that if the plaintiffs in attachment, in whose right, as creditors of Roger Bromley, the defense is made, received a *per centage* of the debt due them under the assignment of Roger Bromley for the benefit of his creditors, then they could not proceed by attachment against any goods owned by Roger Bromley at or prior to the time of making the assignment, and the justification set up in the answer could not be maintained. It is well settled that, unless prohibited by statute, partial assignments of the

debtor's property for the benefit of his creditors may be made, leaving the unassigned residue open to the claims of his creditors, and that creditors may receive their dividends under the assignment and proceed by action to recover the balance, if any, out of the property not assigned. Burrill on Assignments, chap. X; *Bates v. Ableman*, 13 Wis., 644. And whether the assignment be partial or general, a condition that the creditors accepting it must release their claims, or be debarred of their remedy by action against the assignor, makes the assignment void. Burrill, ibid., and chap. XVIII, and cases cited. The plaintiffs in attachment were therefore at liberty to proceed by action against the assignor, and, in a proper case, to attach his goods, provided they were such as were not in fact transferred by the assignment. *Bank of Bellows Falls v. Deming*, 17 Vt., 366.

3. The eighth and ninth instructions may properly be considered together. They involve substantially the same legal propositions, and if one is erroneous, both are. They are to the effect that the assignment by the debtor of all his property for the benefit of his creditors, carried with it to the trustees the title to property which he had previously fraudulently transferred for the purpose of hindering, delaying or defrauding his creditors. This seems to be the very opposite of the settled rule of law. *Brownell v. Curtis*, 10 Paige, 210; *Browning v. Hart*, 6 Barb., 91; *Leach v. Kelsey*, 7 Barb., 466; *Vandyke v. Christ*, 7 Watts & Serg., 373; *Jones v. Yates, supra*; Burrill on Assignments, chap. XXIX, p. 358. The assignor having himself no property in the goods which he had fraudulently transferred, could pass none to his assignees. It was observed by Lord TENTERDEN in the case last cited, that with the exception of a compulsory assignment under the bankrupt laws, which stands upon peculiar grounds, he knew of no instance, and none had been mentioned at the bar, where the representatives could sue where the party represented could not. The case of an executor or administrator suing for the

recovery of real estate fraudulently conveyed by the deceased in his lifetime, under our statute, may be cited as another. R. S., ch. 100, sec. 16. The transfer from Roger Bromley to his assignees being voluntary, he could not give them a right of action when none existed in himself, and that right remained, as before, in his creditors.

Judgment reversed, and a new trial awarded.