THEODORE KELLER v. SMALLEY & HARRIS ET AL.

(Case No. 2022.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS.— Under the statute of April 7, 1883, relating to assignments (Gen. Laws, p. 47), no matter what may be the dis-position directed by an assignor in regard to the trust property conveyed by the assignment, the beneficiaries under the trust can cause it to be admin-istered for the best interest of all, and have it sold either for cash or on a credit.

2. SAME — CONSTRUCTION OF.— The rules applicable to assignments which are not statutory are not conclusive when applied to assignments made under the statute.

3. ASSIGNMENT — LIEN CREDITORS.— If the statute regulating assignments for the benefit of creditors should be so construed as to entitle each creditor to receive from the assignee such part of the entire fund to be distributed as his claim in proportion bears to the amount of all the creditors' claims com-bined who are entitled under the assignment to receive, and this without reference to the claims of creditors holding valid liens on a part of the property assigned, its effect would often be to impair the obligation of a contract, as against a non-consenting lien creditor, which the legislature could not do. The thirteenth section of the act regulating assignments in this connection discussed and construed.

4. SAME.— A creditor holding such valid lien, acquired before the assignment made by the debtor for the benefit of creditors, may enforce it, and the legislature has not required that the lien creditor shall enforce his lien through the assignee.

5. CONSTRUCTION OF STATUTES.— An intention to deny to the creditor the right to enforce a valid lien through the courts should be clearly expressed, and, when no other adequate remedy is provided, it will not be inferred from the

fact that the property through which the right is to be made valuable has legally passed into the hands of an assignee for the benefit of creditors.

6. CHATTEL MORTGAGE — REGISTRATION.— A chattel mortgage under the act of April 22, 1879 (Gen. Laws, 134), is not void as between the mortgagor and mortgagee, if not recorded, but is void only against purchasers and mortgagees in good faith.

7. PURCHASER — ASSIGNEE.— An assignee under a general assignment for the benefit of creditors is not a purchaser within the meaning of such a statute. (Citing Pierson v. Manning, 2 Mich., 454, and other cases found in the opinion.)

8. FRAUDULENT ASSIGNMENT.— The right to impeach or set aside a mortgage which is fraudulent and void, as against the creditors of the mortgagor, does not pass to the assignee of the mortgagor, by a voluntary general assignment in trust for the benefit of creditors subsequently executed, when unaffected by any statute. (Citing Williams v. Winsor, 12 R. I., 9; Gibson v. Warden, 14 Wall., 248, and other cases.)

9. CASE REVIEWED AND FOLLOWED.— Stewart v. Platt, 101 U. S., 735, reviewed and followed.

10. FACT CASE — POWER OF ASSIGNEE TO ATTACK AN UNRECORDED MORTGAGE.— A mortgage was executed in June, 1884, to secure a debt by the debtor, who, in September, 1884, made an assignment for the benefit of such creditors as would consent to take under it. There was nothing to show that the assignment was contemplated when the mortgage was given, or that the mortgagor intended by executing it to delay or defraud other creditors, or to give a preference over other creditors, or that the mortgagee believed that such was the purpose of the mortgagor. *Held*, construing in this connection the ninth section of the act relating to assignments, that the assignee did not have the same right to attack the mortgage, which was unrecorded, as creditors of the assignor holding liens would have.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit filed on the 3d day of October, 1884, by the appellants against B. Smalley and R. F. Harris, composing the firm of Smalley & Harris, on two promissory notes, executed by Smalley & Harris on the 11th day of June, 1884, one for the sum of $1,162.35, due and payable at Houston, Harris county, sixty days after date, to order of appellant, and one for $1,162.34, due and payable ninety days after date, and to foreclose a mortgage on personal property, consisting of mill fixtures, machinery, etc., executed by said Smalley & Harris on the 11th day of June, 1884, to secure the prompt payment of the notes, and making the defendant Wm. Kennedy a party defendant as assignee of the other defendants, with alleged notice of appellant's rights.

Upon affidavit of appellant, a writ of sequestration was issued, by virtue of which the property was seized.

After service the defendants filed a demurrer and special exceptions, which were overruled by the court, October 30, 1884, and a

sworn plea, setting forth that on the 29th day of September, 1884, Smalley & Harris, being unable to pay their debts as they became due, executed an assignment to defendant Wm. Kennedy, for the benefit of their creditors consenting to accept their proportional share of their estate, and discharge them from their proportional claims; that on September 30, 1884, defendant Wm. Kennedy executed a bond with security, in the sum of $12,000, for the faithful performance of his duty, which was approved by the judge and was deposited with the clerk of the county court and filed by him where the assigned property was situated, and where the assignors and assignee resided; that it showed by proper schedules the assigned estate and liabilities of assignors, which, after its acknowledgment, was duly recorded in the county clerk's office of Polk county; that after the assignee qualified, he took possession of the assigned property on the 16th day of October, 1884; that plaintiff brought suit to sequester a portion of the assigned property and subject it to his pretended lien, and alleged that if plaintiff had any remedy against them, or any of them, it was in the district court of Polk county, under the assignment laws of the state, and not in the district court of Harris county; that if plaintiff had a valid mortgage, that then the assignee alone had power to sell the property embraced in the mortgage and apply the proceeds to the claim.

There was much other pleading, which, in view of the opinion, it is not important to state.

*W. P. Hamblen*, for appellant, that the clause in the assignment to sell on a credit rendered it void, cited: R. S., art. 2465; Bailey v. Mills, 27 Tex., 437; Carlton v. Baldwin, 22 Tex., 731; Burrill on Assignments, 197, 198, 199; Baldwin v. Peet, 22 Tex., 713, 714; Barney v. Griffen, 2 Comst., 365, 371; Porter v. Williams, 5 Seld., 510; Burrill on Assignments, 211 *et seq.;* Hutchison v. Lord, 1 Wis., 286; Keep v. Sanderson, 2 Wis., 42; Keep v. Sanderson, 12 Wis., 362; Benz v. Shaughnesy, 2 Utah, 500; Campbell v. Woodworth, 2 Am. L. Reg. (N. S.), 695.

That the assignment could not affect the rights of the mortgagee, he cited: Porter v. Williams, 5 Seld., 142; Burrill on Assignments, p. 303; Whitaker v. Williams, 20 Conn., 98.

That the judgment should have foreclosed the mortgage, he cited: Frow v. Downman, 11 Ala., 880; Pierson v. Manning, 2 Mich., 445; Burrill on Assignments, pp. 484, 485; Ray v. Birdseys, 5 Denio, 626; Wood v. Robinson, 22 N. Y., 567.

*Hill & Corry*, for appellees, that the deed of assigment was not void by reason of the powers conferred, cited: Acts 18th Leg., April 7, 1883, ch. 56, last clause of sec. 6, p. 47; Keating *v.* Vaughn, 61 Tex., 519 *et seq.;* McLendon *v.* King, McRae & Co., Court of App., Tyler, 1884, 4th Law Rev., pp. 251, 252; Burrill on Assignments (4th ed.), pp. 328, 691; id., ch. 43.

That the property passed to the assignee for the benefit of creditors, they cited: Acts 16th Leg., Reg. Sess., p. 57, sec. 1; Acts 18th Leg., Reg. Sess., p. 47, sec. 2; Brothers *v.* Mundell, 60 Tex., 246; Burrill on Assignments, 4th ed., pp. 431, 432, 433, 596; Baldwin *v.* Peet, 22 Tex., 715, 716; Burrill on Assignments, 4th ed., secs. 336, 337, 338.

That the property assigned vested in the creditors, and their assent was not necessary, they cited on motion for rehearing: R. S., Appendix, p. 16, sec. 9; Burrill on Assignments, 4th ed., pp. 432, 433; 1 Smith's Leading Cases, Ed. of 1853, pp. 70, 71; id., of 1855, p. 75; Tennant *v.* Stoney, 1 Rich. Eq. (S. C.), p. 222.

That a mortgage void as to creditors is void as against an assignee for their benefit, they cited: R. S., Appendix, p. 16, sec. 9; Hanes *v.* Tiffany, 25 Ohio St., 549; Killborne *v.* Fay, and Kellar *v.* Shoeffman, 29 id., 275–281; Allen *v.* Massey, 17 Wall., 351; Burrill on Assignments, p. 596; Sixth Ward Build. Ass'n *v.* Wilson, 41 Md., 506; Blandy *v.* Hall, Supreme Court Ohio, October, 1884, 6 Ohio L. J., 105.

STAYTON, ASSOCIATE JUSTICE.— The deed of assignment made by Smalley & Harris to Kennedy for the benefit of their consenting creditors is claimed by the appellant to be void, because it contains the following clause:

" The said assignee is empowered to sell the lumber assigned for cash or on a credit; but if sold on time, good security is to be given by purchaser. The said assignee is empowered to sell the property other than said lumber for one-third or one-half cash, and balance on a credit for twelve months, securing deferred payments by good personal security and deed of trust on property sold, all deferred payments to bear ten per cent. interest from day of sale; provided, however, the assignee is empowered to sell the live stock for cash or on credit, with restrictions aforesaid."

If this be true, it is because of fraud thereby perpetrated upon the creditors of the assignors by them, or by the assignee in accepting the trust with this provision in it.

This objection is met by the statute itself.

The latter part of the sixth section, as amended by the act of April 7, 1883, declares: "And it is further enacted that no fraudulent act, intent or purpose of the assignor or assignee shall have the effect to defeat the assignment, or to deprive the creditors consenting thereto from the benefits thereof, but any such fraudulent act, intent or purpose on the part of the assignee shall be sufficient cause for his removal, as being an unsuitable person to perform the trust, and any consenting creditor may be or become a party to prosecute or defend in any suit or proceeding necessary or proper for the enforcement of his rights under such assignment, or for the protection of his interest in the assigned property." Gen. Laws 1873, p. 47.

Under this, whatever may be the direction of the assignor in regard to the disposition of the trust property which passes by an assignment under the statute, the beneficiaries can cause the trust to be so executed that the estate may be administered for the best interest of all.

Cases may arise in which, for many reasons, sales on credit would best subserve the interest of all, and in such cases creditors could compel the assignee so to sell; and on the other hand, cases may arise in which it would be to the advantage of creditors that the property should be sold for cash, and in such cases the assignee who might desire or intend to sell on a credit could be compelled to sell for cash.

The rules by which the validity of assignments, not statutory, are to be determined have not conclusive application to assignments made under statutes.

In the one case, the assignee has only such power, and the creditors such rights, as the instrument gives through which the assignment is made; while on the other hand the powers of the assignee and rights of creditors are largely dependent on the law under which the assignment is made; and creditors are given power to compel the faithful and proper administration of the assigned estate.

The facts proved in this case give no ground for belief that the clause, in the assignment objected to, was inserted through any improper motive, or for a purpose not tending to the best interest of creditors.

It is claimed that a person holding a lien on property, assigned under the statute, cannot enforce his claim through a suit to foreclose, and that he must enforce his right through the assignee.

Upon this subject the statute is by no means full or clear, but for the proper determination of the question we must look to its pro-

visions, and may look to the rules governing other cases in which the property of an insolvent debtor, under statutory authorization, is placed in the hands of an assignee for the benefit of creditors.

The first section of the act of March 24, 1879, requires the assignment to provide "for a distribution of all his real and personal estate, other than that which is by law exempt from execution, *among all his creditors in proportion to their respective claims*, and, however made or expressed, shall have the effect aforesaid."

The second, after requiring a statement of debts, provides that the debtor shall make "a statement of any existing judgment, mortgage, collateral or other security for the payment of any such debt."

The third declares that "Any debtor desiring so to do may make an assignment for the benefit of such of his creditors only as will consent to accept their *proportional share* of his estate, and discharge him from their respective claims."

The sixth requires the assignee to execute a bond, among other things, conditioned "that he will make *proportional* distribution of the net proceeds of said estate among the creditors entitled thereto."

The twelfth provides that each creditor who has established his claim shall "be entitled to his proportional share of the debtor's estate."

The fifteenth declares that, "Whenever any assignee shall have in his hands funds sufficient to pay ten per cent. of the debts due by the assignor, he shall make a *pro rata* distribution of the same among said creditors."

These several provisions of the act evidently contemplate that such net sum as goes into the hands of the assignee shall be distributed by him *pro rata* among all such creditors as show themselves entitled.

The words "proportion," "proportional" and "*pro rata*" are all used in reference to the same subject-matter, and in the same sense, meaning that each creditor will be entitled to receive from the assignee such part of the entire fund to be distributed as his claim in proportion bears to the amount of all the creditors' claims combined who are entitled, under the assignment, to receive.

If this rule could be applied to the claim of a creditor holding a valid lien on a part of the property assigned, its effect would be, in most cases, to take from the lien creditor that to which he is entitled under his contract. This would be to impair the obligation of a contract, at least as to a non-consenting creditor, which the legislature certainly never intended, as it had no power, to do. The thirteenth section provides that, "if any creditor holds collateral

security of less value than his debt, the value thereof may be estimated by the assignee, and only the difference between such sum and the debt shall be allowed."

The rights of persons holding mortgages, collateral or other securities, as security for debts due to them from the assignor, stand upon equal and the same ground; and it is probably true that the words "collateral security," as used in the thirteenth section of the act, were intended to cover every security by way of lien which creditors might hold to secure the payment of debts. A mortgage is a security additional to that which rests upon the personal obligation of the debtor, and in this sense is a collateral security.

If the creditor could enforce his claim by subjecting the collateral security only through the assignee, then under this section of the statute, although the assignee might realize on the thing held by the creditor as security, yet the creditor would be deprived of all benefit resulting from it, for before he could receive he would have to establish his claim, which he can do, when a security is held by him, only to the extent of the debt in excess of the value of the security.

If a narrower construction than that we are of the opinion should be placed upon the words "collateral security" be the true one, even then the section of the statute referred to evidences the intention of the legislature to leave the creditor free to enforce such liens as he may have in any lawful manner, and without reference to the fact that an assignment has been made.

While no creditor, after an assignment has been made under the statute, can acquire a lien on the assigned property by attachment or otherwise, yet he certainly may enforce any lien which he has acquired before the assignment; and did the act in question declare to the contrary its provision would be inoperative.

That the legislature would have power to require such liens to be enforced through an assignee is not denied, but the question in this case is, Has the legislature so required? We are of the opinion that it has not.

An intention to deny to a creditor the right to enforce a valid existing claim through the courts of the country should be clearly expressed, and it will not be inferred from the fact that the property through which the right is to be made valuable has legally passed into the hands of an assignee for the benefit of creditors, and especially so when no other plain and adequate remedy has been provided.

Under the late bankrupt law a lien creditor was not compelled to

enforce his lien through the court administering the bankrupt estate, but might enforce his lien through the state courts, pending or after the conclusion of the bankrupt proceeding, unless it was shown that prejudice to the estate would result thereby, or that the assignee would be thereby embarrassed.   9 Blatch., 320; 37 Iowa, 654, 662; 49 Miss., 223.

Besides, the property of a bankrupt estate could be sold subject to, or released from, the lien, as the court might direct, but, in any event, the lien holder was protected so far as the proceeds of his security went.

A chattel mortgage, under the act of April 22, 1879 (Gen. Laws, 134), if not recorded, is not void as between the mortgagor and mortgagee; but is so only as against creditors and purchasers and mortgagees in good faith.   Brothers v. Mundell, 60 Tex., 246.

That an assignee under a general assignment for the benefit of creditors is not a purchaser within the meaning of such statutes is well settled.   Burrill on Assignments, 391; Williams v. Winsor, 12 R. I., 9; In re Collins, 12 Blatch., 548; Pierson v. Manning, 2 Mich., 454; Roberts v. Austin, 26 Iowa, 327.

As to creditors, however, it is unimportant under the statute referred to whether they have notice or not.   Brothers v. Mundell, 60 Tex., 246.

The word "creditor" is used in the statute without qualification; yet the statute must be read in the light of the decisions by which, in such statutes, it has long been held that only such creditors as have acquired some character of lien upon or interest in the mortgaged property are embraced.   Ayres v. Duprey, 27 Tex., 608; Grace v. Wade, 45 Tex., 527; Barrett v. Barrett, 31 Tex., 351; Walker v. Miller, 11 Ala., 1084.

It is claimed, however, that the assignee, Kennedy, as he represents creditors, has a right superior to any the assignees may have had prior to the assignment, and even superior to the rights which creditors of the assignor may have had prior to the conveyance; that, by operation of the deed of assignment, the assignee has the same rights as against the holder of the unrecorded mortgage as would a lien creditor.

If this be true, it must result from one of two reasons, or from both.   It must result from the power of the debtor to confer a right greater than he possessed himself, or from something in the assignment law which gives to the assignee for the benefit of general creditors the right and power to set aside mortgages valid between the assignor and the mortgagee, but not recorded, as lien creditors might set aside such a mortgage.

The rule applicable to the first ground is thus, we believe, correctly stated: " It is a general rule of law that a person cannot, by any voluntary act of his own, transfer to another a right which he does not himself possess. A fraudulent transfer of property by a debtor, made with intent to defeat creditors, is, as we shall presently show, conclusive upon the debtor. No logical theory can be easily framed upon which it can be said that an assignment, wholly voluntary on the debtor's part, vests in his assignee the right to attack fraudulent transfers. Consequently it has been held that the right to impeach or set aside a mortgage which is fraudulent and void as against the creditors of the mortgagor did not pass to the assignee of the mortgagor by a voluntary general assignment in trust for the benefit of creditors subsequently executed, and unaffected by any statute in force at the time." Wait on Fraudulent Conveyances, 115.

This rule is well sustained by authority. Williams v. Winsor, 12 R. I., 9; Dorsey v. Smithson, 6 H. & J., 63; Johnson v. Patterson, 2 Woods, 445; In re Collins, 12 Blatch., 548; Gilson v. Warden, 14 Wall., 248; Browell v. Curtis, 10 Paige, 217; Estabrook v. Messersmith, 18 Wis., 551; Burrill on Assignments, 391; Jones on Chattel Mortgages, 363, 241; Walker v. Miller, 11 Ala., 1081; Butler v. Lee, 11 Ala., 883; Coggeshall v. Potter, 1 Holmes, 75.

In the case of Stewart v. Platt, 101 U. S., 735, suit was brought by an assignee in bankruptcy, for the purpose, among others, of having adjudicated his right to certain funds arising from the sale of certain property which prior to proceedings in bankruptcy had been covered by the bankrupt with chattel mortgages, not valid as against creditors because not recorded as required by statute.

The law regulating chattel mortgages was identical with that in force in this state. In that case as in this, it was claimed that the right of the assignee was superior to that of the holder of the unrecorded chattel mortgage, but the court said: " In Yeatman v. Savings Institution (95 U. S., 764), we held it to be an established rule that, except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens or incumbrances, whether created by operation of law or by the act of the bankrupt, which existed against the property in the hands of the bankrupt. Brown v. Heathcote, 1 Atk., 160; Mitchell v. Winslow, 2 Story, 630; Gibson v. Warden, 14 Wall., 244; Cook v. Tullis, 18 id., 332; Donaldson v. Farwell, 93 U. S., 631; Jerome v. McCarter, 94 id., 734. He takes the property in the same plight and

condition that the bankrupt held it. Winsor v. McLellan, 2 Story, 492. The decree below is plainly in contravention of this rule.

"Although the chattel mortgages, by reason of the failure to file them in the proper place, were void as against judgment creditors, they were valid and effective as between the mortgagors and the mortgagee. Lane v. Lutz, 1 Keyes (N. Y.), 213; Wescott v. Gunn, 4 Duer (N. Y.), 107; Smith v. Acker, 23 Wend. (N. Y.), 653.

"Suppose the mortgagors had not been adjudged bankrupts, and there had been no creditors, subsequent purchasers or mortgagees in good faith to complain, as they alone might, of the failure to file the mortgages in the towns where the mortgagors respectively resided. It cannot be doubted that Stewart, in that event, could have enforced a lien upon the mortgaged property in satisfaction of his claim for rent. The assignee took the property subject to such equities, liens or incumbrances as would have affected it had no adjudications in bankruptcy been made. While the rights of creditors whose executions preceded the bankruptcy were properly adjudged to be superior to any which passed to the assignee by operation of law, the balance of the fund, after satisfying these executions, belonged to the mortgagee, and not to the assignee for the purposes of his trust. The latter, representing general creditors, cannot dispute such claim, since, had there been no adjudication, it could not have been disputed by the mortgagors. The assignee can assert, in behalf of the general creditors, no claim to the proceeds of the sale of that property which the bankrupts themselves could not have asserted in a contest exclusively between them and their mortgagee. As between the mortgagors and the mortgagees, the chattel mortgages were and are unimpeachable for fraud, or upon any other ground recognized by the bankrupt law."

That there are cases holding a different rule is certainly true, but to what extent the decisions were based on statutes we are unable to ascertain.

If the chattel mortgage act declared all unrecorded mortgages void, without qualification, there could be no question; but it does not declare such unrecorded mortgages void as between the parties to them.

Such mortgages being valid as between the parties to them, and the assignee, by the act of the assignors, taking no higher or other right than they had, it only remains to inquire whether there is anything in the act under which the assignment was made which gives to the assignee the same right to attack the unrecorded mortgage as creditors of the assignors holding liens would have.

It has been properly held that power may be given by statute to

an assignee to assert in favor of creditors generally, and for their benefit, a claim to any property which the assignor, prior to the assignment, conveyed in fraud of creditors, and that such statutory power or right takes the place or is the equivalent of the specific lien required before the creditor himself can controvert the validity of the conveyance. Southard *v.* Benner, 72 N. Y., 427; Barton *v.* Hosner, 24 Hun, 468; Cady *v.* Whaling, 7 Biss., 434.

The only section of the act which can have any bearing on this question is the ninth, which declares that "All property conveyed or transferred by the assignor, previous to and in contemplation of the assignment, with the intent or design to defeat, delay or defraud creditors, or to give preference to one creditor over another, shall pass to the assignee by the assignment, notwithstanding such transfer; and the assignee, or, in case of his neglect or refusal, any creditor or creditors may in his name, upon securing such assignee against cost of liability, sue for, recover, collect, and cause the same to be applied for the benefit of creditors as other property belonging to the debtor's estate in the hands of the assignee; but if it shall appear in such action that the purchaser of any such property bought the same of the assignor in good faith and for a valuable consideration, and without any reason to believe that the debtor was conveying or transferring the same with intent or design aforesaid, such purchaser shall be held to have acquired, as against the assignee and creditors aforesaid, a good and valid title to such property."

If the words "convey or transfer" embrace a mortgage, and for the purposes of this case we will consider them so to do, then, several things must concur to give the assignee the right claimed in this case.

1st. At the time the conveyance or transfer is made the assignor must have had in contemplation the assignment.

2d. The conveyance or transfer must be made with intent to delay or defraud creditors, or to give preference to one creditor over another.

3d. The person to whom the conveyance or transfer is made must not be one who takes in good faith and for valuable consideration without reason to believe that the debtor was acting with the invalidating intent or design.

An act may be said to be done "in contemplation of the assignment," if done at the time the debtor is insolvent, and intends or purposes to make an assignment, or has under consideration whether he shall make an assignment, knowing that he is insolvent.

The mortgage in question was executed June 11, 1884, to secure

two notes on that day executed to Keller by the assignees, amounting in the aggregate to $2,364.69, and the assignment was made September 29, 1884.

The estimated value of the property assigned was $13,271.50, and the indebtedness intended to be secured was $10,243.48.

There is no evidence tending to show that the assignees contemplated making an assignment at the time they made the mortgage to Keller, nor is there any evidence tending to show that the intent of the mortgagors in making it was to delay or defraud their creditors, or to give to Keller a preference over others in the ultimate payment of their debts.

The debt for which the mortgage was given is admitted, even in the assignment, to be a just debt, and therein it is provided for as fully as the assignees could do so.

There is no evidence showing other than the utmost good faith in Keller, and an utter want of evidence to show that he had any reason to believe, at the time he took the mortgage, that the mortgagors intended thereby to delay or defraud their other creditors, or to give him any preference which would operate to their prejudice.

These things being true, the statute under consideration gives to the assignee no such right as he claims.

The assignment was made for the benefit of such creditors as would consent to take under it and discharge the assignors, yet it is not shown that any creditor had consented to take under it.

The judgment will be reversed, and will be here rendered in favor of the appellant for the amount due to him on the notes sued on and foreclosing the lien on the property mortgaged, without prejudice to the right of any person holding a lien superior to that of the appellant, and directing that any money arising from the sale of the mortgaged property, in excess of such sum as may be necessary to discharge this judgment and costs of this action, be paid to Kennedy, the assignee; and it is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered March 17, 1885.]