## COLBERT *v.* BAETJER.

UNRECORDED BILL OF SALE, EFFECT OF; BONA FIDE PURCHASERS;
ASSIGNEES.

1. An unrecorded and unacknowledged bill of sale of property left
   in the possession of the grantors, to a creditor to secure the
   payment of the purchase price of the property, is, under the
   act of Maryland of 1729, Ch. 8, void only as against *bona fide*
   purchasers for a valuable consideration, and creditors who may
   have dealt with the grantors on the faith of their ownership of
   the property.
2. Neither the assignee of an insolvent debtor under a voluntary
   deed of assignment, nor the creditors whom he represents, in
   so far as he may be said to represent them, are purchasers for a
   valuable consideration, without notice, as against prior equita-
   ble claims; and the assignee takes no better title and no higher
   rights than the assignor had at the time of the assignment.
3. The rule is otherwise as to receivers in bankruptcy or insolvency,
   statutory assignees generally, statutory receivers and receivers
   in equity, who derive their rights and powers not from the as-
   signee, but the statute governing them.

No. 335. Submitted October 12, 1894. Decided November 6, 1894.

HEARING on an appeal by the defendants from a judgment
in an action of replevin. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in replevin, instituted by the appellees, Her-
mann Baetjer and Ludwig Meyerstein, as plaintiffs in the
court below, to recover 350 barrels of cement, of the alleged
value of $927.50, which came into the hands of the appel-
lants, Michael J. Colbert and J. Nota McGill, defendants in
the court below, as assignees of one William C. Lewis, under
a voluntary deed of assignment to them for the benefit of
creditors, and which the plaintiffs claimed under a previously
executed but unrecorded bill of sale from William C. Lewis
& Co.

The facts of the case, about which there seems to be no

controversy, are that in the summer of 1890, the appellees sold 350 barrels of cement to the firm of William C. Lewis & Co., composed of William C. Lewis and George T. Parks; that subsequently, on October 2, 1890, having reason to doubt the solvency of William C. Lewis & Co., the appellees procured from them, through George T. Parks, a bill of sale of this cement; that the bill of sale was never acknowledged or recorded; that the goods intended to be covered by the bill of sale were permitted to remain in the warehouse of William C. Lewis & Co., subject to the disposal of the latter, although the bill of sale specified that they should be subject to the order of the appellees; that on November 1, 1890, George T. Parks withdrew from the firm of William C. Lewis & Co., having sold his interest therein to his partner; that William C. Lewis continued the business under the same firm name; that on the 18th of December, 1890, Lewis, in the name of the firm, made a general assignment of all his property, specifying therein the lime and cement in his warehouse, to the appellants as trustees for the benefit of his creditors, with preferences to two designated creditors; that these assignees or trustees took possession of the property under this assignment to them; and that they refused to deliver the cement to the appellees upon demand made for it by the latter. It seems, also, that, at the time of the institution of the suit, only 101 of the 350 barrels were found in the warehouse of Lewis & Co., of the value of $267.65; and these were taken and delivered to the appellees upon the writ of replevin.

At the trial, upon this condition of facts, each party moved for a verdict in their own favor; and the court directed a verdict in favor of the plaintiffs for one cent damages and costs, the property having been already delivered to them upon the writ. And judgment was entered accordingly. From this judgment the defendants have duly prosecuted the present appeal.

*Mr. Michael J. Colbert* and *Mr. J. Nota McGill,* appeared in proper person :

1. The bill of sale under which the appellees claim title was null and void under the Maryland act of 1729, and no title to the goods in controversy passed thereunder.

It is conceded that the bill of sale in question was never acknowledged and never recorded, and if Section 5 of that act stood alone, there would be no question that the bill of sale was inoperative and void; but it is contended that the bill of sale being valid between the parties, is, under Section 6, binding on the appellants, who, as assignees of Lewis & Company, stand in their shoes and take only the rights that Lewis & Company themselves had.

It has been frequently held in Maryland that this statute was intended for the benefit of creditors, as the preamble indicates. *Gouch* v. *Edelin,* 5 Gill, 101 ; *Hudson* v. *Warner,* 2 H. & J. 415 ; *Garrett* v. *Hughlett,* 1 H. & J. 4 ; *Hambleton* v. *Haywood,* 4 H. & J. 445. So that if the present controversy were between the creditors of Lewis & Company and the appellees, the bill of sale would undoubtedly be held void as against the latter. We contend that in this action the assignees are not only the representatives of the assignors, vested with the title owned by the latter, but they are in addition trustees for the creditors, charged with the duty of preserving the assets coming into their hands and administering the same for the benefit of the creditors.

The deed of assignment is an instrument under seal, executed and acknowledged with all the solemnity usually attending the execution of deeds, and expressly imposing upon the assignees the duty of protecting the creditors of the firm. Under this instrument, are the assignees mere volunteers, succeeding only to the title of their assignors, or are they purchasers for a valuable consideration ? The very moment that this deed was executed and recorded it removed all the property of the firm beyond the reach of the firm's

creditors, and the only remedy left to the creditors was to see that the trust was properly administered by the assignees. So that by its effect, and indeed by the very terms of the deed, the assignees are not only the representatives of the assignors, but they are the representatives of the creditors, vested with all the rights of the property of the insolvent that the creditors themselves could enforce by legal process. If no assignment had been made, the creditors could have pursued these goods and subjected them to the payment of their claims, and no good reason appears to exist why their trustees should not do the same thing for their benefit.

The assignees of an insolvent debtor in the District of Columbia, represent the creditors of the insolvent and can avail themselves of all equities that may exist in favor of such other creditors. *Bank* v. *Herbert*, 8 Cranch, 36 ; *Casey* v. *Caveroc*, 6 Otto, 467 ; *Spring* v. *Short*, 40 N. Y. 544; *Hanes* v. *Tiffany*, 25 Ohio St. 549 ; *Adam* v. *Merchants' Bank*, 2 Fed. Rep. 174. An assignee is clothed with all the necessary power to obtain possession of the property assigned and to collect debts by process of law, and he may avoid a previous fraudulent assignment. Burrill on Assignments, 486 ; *Van Heusen* v. *Radcliffe*, 17 N. Y. 580 ; *Englebert* v. *Blanjot*, 2 Whart. 240.

In *Crooks* v. *Stuart*, 7 Fed. Rep. 800, it was held that the assignee might prosecute any suit to recover assets in the hands of third parties, or to enforce the payment of claims that could have been prosecuted by the creditors themselves. See also *Wells* v. *Langheim*, 20 Fed. Rep. 183; *Simon* v. *Oppenheimer*, 20 Fed. Rep. 553. A mortgage void as to creditors is void as against an assignee in trust for the benefit of creditors. *Hanes* v. *Tiffany*, 25 Ohio, 549 ; *Kilbourne* v. *Fay*, 29 Ohio, 264. In Missouri, assignees have been treated as bona fide purchasers for a valuable consideration. *Gates* v. *Labeaume*, 19 Mo. 17; *Bank* v. *Hughes*, 10 Mo. App. 7. And the same rule prevails in Virginia and West Virginia. *Evans* v. *Greenbow*, 15 Grattan, 153 ; *Bank* v. *Knox*, 19

Grattan, 739; *Harrison* v. *Bank*, 19 W. Va. 424. The same ruling was made in *Dey* v. *Dunham*, 2 John. Ch. 188, where the court held that a general assignee in trust for creditors was to be considered as a *bona fide* purchaser against a prior unrecorded mortgage. See also 8 Lea (Tenn.), 67; *Spring* v. *Short*, 40 N. Y. 544. An assignment is founded on a valuable consideration. Although the conveyance is in form to the assignee it is in effect to the creditors and they are the real beneficiaries. Bump on Fraud. Con. 360.

These authorities establish the principle that under the terms of the Maryland act this unrecorded bill of sale is void as against the appellants, and cannot be set up by the appellees in a proceeding like the present. The appellees allowed the goods to remain in the possession of Lewis & Company, and thereby allowed innocent third parties to extend credit to the firm on the faith of its apparent ownership of the property, and the case is thus brought within the spirit and the letter of the law. To allow the appellees to set up this unrecorded bill of sale in the present suit would be to defeat the purpose for which the law was made.

2. The bill of sale relied upon by the appellees is fraudulent and void, independently of the statute. It appears from the record that some secret arrangement, not fully disclosed by the proof, was made between Lewis & Company and the appellees, by which the former, although apparently parting with the title to the goods in controversy, were to be allowed to retain them in their warehouse, without giving the public any evidence or notice of the change of title, and were allowed to sell them, and to deal with them in all respects as if the goods still remained the property of the firm. The execution of the bill of sale was very shortly followed by the execution of the deed of assignment, and no notice either before or after the assignment was ever given to the assignees of the existence of the alleged bill of sale. It was undoubtedly within the power of Lewis & Co. to protect the firm of Baetjer & Meyerstein by either having

the bill of sale recorded, or by delivering the actual custody of the goods to the appellees. The failure to do the latter, in the absence of any explanation, creates a presumption of fraud. *Casey* v. *Caveroc*, 6 Otto, 46.

But whether the presumption of fraud be conclusive or not, the court erred in taking the question away from the jury, and directing the verdict against the appellants. There was sufficient evidence of fraud to require the submission of the question to the jury. Baetjer and Lewis, the parties who consummated this fraudulent design, were both accessible, but neither were called to testify, although it will be conceded that Lewis, a resident of the city of Washington, was actually present in the court room during the trial.

At common law a mortgage of chattels which permits the mortgagor to retain possession of the property, and to deal with it as his own, is void as against a creditor who becomes such without notice of the mortgage. *Crooks* v. *Stuart*, 7 Fed. Rep. 800. And in *Hamilton* v. *Russell*, 1 Cranch, 309, the Supreme Court say that : " Fraudulent conveyances, which are made to secure a debtor a beneficial interest while his property is protected from creditors, will be most effectually prevented by declaring that an absolute bill of sale is itself a fraud unless possession accompanies and follows the deed." See also *Nickerson* v. *Nickerson*, 28 Md. 382 ; *Randall* v. *Cook*, 17 Wend. 53.

*Messrs. Edwards & Barnard* for the appellees :

The failure to acknowledge and record the bill of sale does not invalidate the sale as against the party making the same, or his assigns; and the appellants can have no other or greater right as against the appellees than their assignor could have had. An assignee, in a general assignment for the benefit of creditors, is not a *bona fide* purchaser for value. Burrill on Assignments, Sec. 349 ; *Moses* v. *Thomas*, 26 N. J. L. 124 ; *Van Wagner* v. *Moses*, 26 N. J. L. 570. It is true such

assignee does, in one sense, or for certain purposes, represent creditors, but he also represents the assignor, and is barred and estopped by all the honest acts of his assignor; and the bill of sale in this case was an honest transaction, being an endeavor to apply a portion of his estate to the payment of a *bona fide* debt. The assignee "does not represent the creditors who may have superior claims, and he is not armed with their powers." *Marks's Appeal*, 85 Pa. St. 231; Burrill on Assignments, Sec. 352 *n.* 4. The question here arises between assignees who, in this case do not in fact represent *general* creditors, but only *preferred* creditors, and another *preferred* creditor, who is prior in time. When the bill of sale was made to Baetjer & Meyerstein, the goods were set apart from the other goods in stock, and there is no evidence to show that any subsequent creditor trusted the assignor on the faith of his owning said goods, or that he incurred any debts after that date.

An assignee in bankruptcy has no greater rights in respect to unrecorded deeds made by the debtor than the debtor himself would have; and, certainly, an assignee voluntarily appointed by the debtor could have no greater rights than one appointed under the provisions of the statute of bankruptcy. 1 Jones on Mortgages, Sec. 468. At common law, the assignee for the benefit of creditors takes no better title and no higher rights than the assignor himself had. *Chace* v. *Chapin*, 130 Mass. 131.

The unrecorded bill of sale is not void as to the *seller*, or his *assigns*, or anyone " claiming *under* him or them." If the same can be declared void here, it is on the application of the assignees themselves, or on the application of parties claiming *under* them by virtue of the contract relations between the seller and them, namely the *creditors* who are *preferred* in the assignment. The title of appellants to the property in question, being solely a derivative one under the assignment, they can assert and enforce no claim or right thereunder which the assignor could not legally have

enforced had no assignment been made. Jones on Chattel Mortgages, Sec. 363; *Flower* v. *Cornish*, 25 Minn. 473. The assignee only represents the creditors in respect to their rights and interests under the assignment, and not as to those rights belonging to them independent of its provisions. *Brownell* v. *Curtis*, 10; *Estabrook* v. *Messersmith*, 18 Wis. 573.

Mr. Justice Morris delivered the opinion of the Court:

The question in the case is, whether the bill of sale relied upon by the appellees was fraudulent and void as against the claim of the assignees. The argument is, that the assignees represent, not only the debtor or assignor, but likewise the creditors; and are therefore to be regarded as *bona fide* purchasers for value.

Probably by this bill of sale the appellees merely sought in good faith to secure the payment of their own claim against William C. Lewis & Co. in the disaster which they saw to be impending over that firm; and it may be assumed that there was no intentional fraud in it. But that it would be void as against creditors of William C. Lewis & Co., who dealt with that firm on the faith of their supposed ownership of this property, and void as against all subsequent purchasers of the property, or of any part of it, in good faith in due course of business, is, of course, beyond question. Such would have been the result of the statute; and such would have been the result of the law in the absence of the statute. And if this were a controversy between such creditors or purchasers, on the one side, and the appellees on the other, there would not be much room for argument. But such is not the case here. The controversy is one between certain creditors and the voluntary assignees of the debtor for the benefit of other creditors. In substance, it is a contest between two classes or sets of creditors, wherein those claiming adversely to the bill of sale show no equity equal or superior to that of the appellees holding the legal title under that instrument. For it does not appear that any of

the creditors assumed to be represented by the assignees became such on the faith of this property or of the ownership of it by Lewis & Co., or were misled into becoming such creditors by the negligence or fraud of the appellees.

The act of Maryland of 1729, Ch. 8, yet in force in the District of Columbia, provides as follows:

"Sec. 5. And whereas it has often happened that several persons have heretofore secretly made over unto their creditors, or pretended creditors, or given their own children or others, sundry goods and chattels, and yet kept the same in their own possession, whereby they have been believed to be the proprietors of such goods and chattels, and thereby procure to themselves credit for considerable sums of money and quantities of tobacco, to the great prejudice of several inhabitants of this province, and others, be it therefore enacted, &c., That from and after the end of this session of assembly, no goods or chattels whereof the vendor, mortgagor, or donor, shall remain in possession, shall pass, alter or change, or any property thereof be transferred to any purchaser, mortgagee, or donee, unless the same be by writing and acknowledged before one provincial justice, or one justice of the county where such seller, mortgagor, or donor shall reside, and be within twenty days recorded in the records of the same county.

"Sec. 6. *Provided always*, That nothing in this act shall extend, or be construed to extend, to make void any such sale, mortgage, or gift, against such seller, mortgagor, or donor, his executors, administrators, or assigns only, or any claiming under him, her, or them."

As already stated, the bill of sale upon which the appellees rely was neither acknowledged nor recorded; and it was undoubtedly void as against *bona fide* purchasers for a valuable consideration. It may, also, with equal confidence, be regarded as void against creditors who may have dealt with Lewis & Co., if any there were, on the faith of their ownership of the property mentioned in it. But by the

express proviso of the statute it was good and valid against Lewis & Co. themselves, as well as against their assignees and it is therefore good and valid against the appellants, who are specifically assignees, unless it can be shown that they are, in contemplation of law, purchasers for a valuable consideration or have the rights of creditors who have dealt with the assignors on the faith of the presumption that they were the real as well as apparent owners of the property covered by the bill of sale, and received credit on that account.

There is very respectable authority for the doctrine that the voluntary assignees of an insolvent debtor are to be regarded as purchasers of the property assigned to them for a valuable consideration; and that they hold not only the title of their assignor, but also the right of the creditors to attack any false or fraudulent transfer or conveyance that may have been made by him. Such to a greater or less extent seems to have been the rule laid down by the courts of Virginia, West Virginia, and Missouri. *Exchange Bank* v. *Knox,* 19 Grat. 739; *Harrison* v. *Farmers' Bank,* 9 W. Va. 424; *Gates* v. *Labeaume,* 19 Mo. 17. In an early case in New York, *Dey* v. *Dunham,* 2 John. Ch. 182, it was held that a general assignee in trust for creditors was to be regarded as a *bona fide* purchaser as against a prior unrecorded mortgage. In Ohio, under the statute of that State, a somewhat similar doctrine seems to have been maintained. *Hanes* v. *Tiffany,* 25 Ohio St. 549. The case of *The Bank of Alexandria* v. *Herbert,* 8 Cranch, 36, and the case of *Casey* v. *Cavaroc,* 96 U. S. 467, are supposed by the appellants to give countenance to the same doctrine and to be controlling upon us in this District. But undoubtedly the vastly preponderating current of authority is, and has been, to the effect that neither the assignee of an insolvent debtor under a voluntary deed of assignment, nor the creditors whom he represents, in so far as he may be said to represent them, are purchasers for a valuable consideration, without notice, as against prior

equitable claims; and that the assignee takes no better title and no higher rights than the assignor had at the time of the assignment.  *Chace* v. *Chapin*, 130 Mass. 128 ; *Williamson* v. *Nealey*, 81 Me. 447 ; *James* v. *Mechanics' Nat. Bank*, 12 R. I. 460 ; *Griffin* v. *Marquardt*, 17 N. Y. 28 ; *Shaw* v. *Glen*, 37 N. J. E. 32 ; *Moses* v. *Thomas*, 26 N. J. L. 124 ; *Morris's Appeal*, 88 Pa. St. 368 ; *Marks's Appeal*, 85 Pa. St. 231 ; *Hodgsen* v. *Barrett*, 33 Ohio St. 63 ; *Pierson* v. *Manning*, 2 Mich. 445 ; *Davis* v. *Chicago Dock Co.*, 129 Ill. 180 ; *Head* v. *Miller*, 45 Minn. 446; *Roberts* v. *Corbin*, 26 Iowa, 315 ; *Drew* v. *Drum*, 44 Mo. App. 25 ; *Dunsmoor* v. *Furstenfeldt*, 88 Cal. 522 ; *Keller* v. *Smalley*, 63 Tex. 512 ; *Frow* v. *Downman*, 11 Ala. 880 ; *Carter* v. *Lipsey*, 70 Ga. 417 ; *Bowles* v. *Bowles*, 80 Ky. 529 ; *Ratcliffe* v. *Sangston*, 18 Md. 383 ; *Stockett* v. *Goodman*, 47 Md. 54 ; *Tyler* v. *Abergh*, 65 Md. 18.

And this doctrine seems to be founded upon good reason and sound principle.  For it is difficult to see how, without any new consideration supervening at the time, either the assignee or the creditors could by any deed of assignment acquire from the debtor any greater or better title than the debtor himself has at the time of making the assignment, The debtor cannot give that which he has not, or to which he is not himself entitled.

The case of assignees in bankruptcy or insolvency, statutory assignees generally, statutory receivers and receivers in equity, stands upon very different grounds.  In that case the assignee may, and generally does, have, by virtue of the statute, rights and powers which the assignor may not be entitled to exercise.  But such rights and powers are not derived from the assignor, but from the statute; and the assignee is not there the mere agent or representative of the assignor, to exercise only the rights that were in the assignor at the time of the assignment, but the representative of the creditors as well, armed with all their rights and powers, even rights antagonistic to those of the debtor.  Indeed, in such cases, the assignee might properly be considered neither the agent of

the assignor nor of the creditors, but the representative of the public authority to do justice between them, notwithstanding that his selection in the first instance may have been the sole and exclusive act of the assignor. *Kennedy* v. *Gibson,* 8 Wall. 498; *Davis* v. *Gray,* 16 Wall. 203; *Bank* v. *Kennedy,* 17 Wall. 19.

The case of *The Bank of Alexandria* v. *Herbert,* 8 Cr. 36, cited on behalf of the appellants, arose under an insolvent law enacted by Congress for the District of Columbia, 2 Stat. 237, since repealed, in which special provision was made for the appointment of an assignee to act under the orders of the court, the appointment to be actually made by the creditors, or in default of action by them, by the court itself. The debtor had no voice in the appointment; and the assignee could not in any sense be considered as his agent, but rather the agent of the creditors in antagonism to the debtor, or the officer of court. Moreover, the controversy in that case seems to have depended on the construction of the record laws of the State of Virginia with reference to an unrecorded mortgage, and that construction has no bearing upon the question involved in this case.

The case of *Casey* v. *Cavaroc,* 96 U. S. 467, was that of a receiver appointed by the parties under the civil law of Louisiana. In that case, the Supreme Court, by Mr. Justice Bradley, said: "While it is generally true that an assignee for the benefit of creditors holds the property assigned subject to the same equities as the debtor or assignor held it, it is not universally true. Many transactions would be binding on the latter, which would not be binding on the assignee. All sales and securities made for the actual purpose of defrauding creditors are of this class. By the law of Louisiana, a pledge, in order to be effective against third persons, must be accompanied by a privilege. It may be valid as a contract between the parties without this quality, as held both in the French law (as already shown) and in Louisiana, in the case of *Matthews* v. *Rutherford,* 7 La. Ann. 225. But

Art. 3162 expressly declares that the privilege arising from a pledge does not subsist, except when the thing pledged has been actually put and remained in the possession of the creditor, or of a third person agreed on by the parties. Without the privilege, or right of preference, the Credit Mobilier has no claim to hold the securities in question as against the other creditors. How, then, can it set up such a claim against the receiver? The receiver does not represent the bank alone; he represents all the parties. He represents the law, which takes charge of the property for the benefit of all creditors, according to their respective and mutual rights. . . . He the [receiver] is not made receiver by the voluntary assignment of the bank, but is appointed by the magistrate *in invitum* the bank, for the very purpose of securing equal justice to all its creditors, and under a law which sternly forbids preferences. Surely such an officer, whatever may be the rule in the case of voluntary assignments, may assert those rights of the general creditors which the law itself creates, without being subject to all the disabilities under which the bank would labor in combating its private engagements with favored creditors." And subsequently, commenting on the case of *The Bank of Alexandria* v. *Herbert,* already cited, Mr. Justice Bradley goes on to say : " The case of *The Bank of Alexandria* v. *Herbert,* 8 Cranch, 36, presents a state of things almost precisely analogous to this. There the trustee of an insolvent debtor recovered the proceeds of property which the latter had mortgaged to the bank. The recovery was had on the ground that the mortgage had not been recorded in proper time, under the law of Virginia, which declared that all deeds and mortgages, though good between the parties, should be void as to creditors and subsequent purchasers without notice, unless recorded within eight months from date. 'To set up this deed against the creditors,' said Mr. Chief Justice Marshall, 'would be to defeat the very object for which the law was made.' Indeed it may be laid down as a general rule,

as well at the common law as the civil law, that a trustee, assignee, or syndic, having the powers, and occupying the relations which are sustained by a receiver under the National Banking Act, or an assignee in bankruptcy, may well oppose any privilege or preference which the law itself, unaided by a *bona fide* purchase or judgment, would regard as void against the general creditors in a direct contest between them, and the parties claiming such privilege or preference, even though the debtor himself, on account of some personal disability arising from his own acts or engagements, could not resist the claim."

A clear distinction is here pointed out between the cases in which the assignee of an insolvent debtor may avoid the acts of his assignor, and those in which he may not do so

But, assuming for the present that the assignees in the case before us are clothed with all the powers of the creditors of their assignor, and entitled to attack and avoid all his acts that operate as a fraud upon the rights of the creditors, it is not apparent that in any proceeding directly by themselves, or indirectly through the assignees, the creditors could successfully assail the bill of sale made by the debtor to the appellees. It is not questioned that the appellees had a valid subsisting claim against Lewis & Co., and that Lewis & Co. were justly indebted unto them in the full amount attempted to be secured by the bill of sale. There was no taint whatever of actual fraud in the transaction. The illegality, if any there be, was wholly constructive, and consisted merely in the failure to have the bill of sale acknowledged and recorded. If this omission injured no one, if no one was induced to become a creditor of Lewis & Co., on the faith of their possession and supposed ownership of the property covered by the bill of sale, it is not apparent that any right was lost by the failure of the parties to acknowledge and record the instrument. There is nothing in the record to show that the creditors, or any of them, could have successfully assailed this bill of sale. So far as we are advised by

the record, Lewis & Co., at the time at which it was made, had a perfect legal right to satisfy the claim of the appellees by the delivery or pledge of goods to them, by the sale of such goods, or by mortgage. They had a right at that time to make a preference in favor of the appellees, and the bill of sale might well be regarded as a partial assignment, with a preference. Indeed, the present controversy might without impropriety be considered as a contest between two sets of preferred creditors, in which the equities in favor of those who are later in point of time have nothing whatever to commend them as superior to those of the claimants under the prior instrument.

Entertaining these views, we are compelled to hold that the judgment of the court below was right; *and we accordingly affirm that judgment, with costs.*